L. G. ARNOLD, INC., Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*October 11—November 5, 1957.*

For the appellant there was a brief and oral argument by *Darrell O. Hibbard* of Eau Claire.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

BROADFOOT, J. The plaintiff, L. G. Arnold, Inc., had a contract to remove concrete piers from the Fox river upon which a bridge had been located. To remove the piers it was necessary to blast the same. The employer directed its superintendent of that particular job to hire a certified blaster as required by the commission's General Order on Explosives No. 661. The superintendent hired one Eugene Randerson, a certified blaster, to take charge of the blasting operations. On August 9, 1954, Randerson set off a blast of dynamite that had been placed in holes drilled in one of the piers. A piece of concrete struck him and he died as a result of the injuries thus sustained. Compensation was ordered to be paid. Thereafter the commission, on its own motion, gave notice of hearing to determine the question of liability for increased compensation to be paid directly by the employer because of the violation of a safety order or statute of the state relating to safety.

At the conclusion of the hearing the examiner for the commission found that the employer furnished all the necessary equipment to protect its employees during the blasting operation; that the employer had no control over blasting; that the blaster was injured because of his own failure to comply with the rules and regulations that he knew should have been followed; and that there was no violation on the part of the employer of any safety order of the commission. The examiner therefore ordered that the application for increased compensation be dismissed. Randerson's widow then sought a review of that order by the entire commission. The commission set aside the order of its examiner and in the interests of justice directed that a further hearing be had to permit the introduction of additional testimony. Following the second hearing the commission found that the deceased's death was caused because of violation by the employer of General Orders on Explosives of the Industrial Commission Nos. 651, 666, and 668, and ordered payment to the widow of increased compensation amounting to 15 per cent of the death benefits previously ordered paid. The pertinent orders and statutes are as follows:

"*Order 651*—CONSTRUCTION OF ORDERS.

"Failure on part of superintendents, foremen, bosses, and other persons having control of any place of employment, or of any employee and of any operations, to carry out any duty prescribed in these orders is violation of such order by the employer."

"*Order 661*—CERTIFICATES OF COMPETENCY.

"(a) No person shall be permitted to prepare explosive charges or conduct blasting operations, and no employer shall employ any person for such purposes unless such person holds a valid certificate of competency issued by the Industrial Commission after a determination of fitness by examination.

"(b) Persons authorized to prepare explosive charges or conduct blasting operations shall comply with all provisions

of the General Orders on Explosives, and shall use every reasonable precaution to insure the safety of the workmen and general public. They shall not delegate the work of preparing explosive charges or conducting blasting operations to a person who does not hold a certificate of competency, except under their direct supervision. A person not holding a certificate of competency may act only as a helper. . . ."

"*Order 666*—FIRING BLASTS—GENERAL.

"(a) *Surface Blasting Out of Doors.*
"Before any blast shall be fired, a prearranged, audible warning signal shall be sounded and all personnel required to retire to a shelter house designed for the purpose or equivalent, but in no case shall the persons be less than 300 feet away when the blast is fired.

"If shelters are not available, persons shall retire to a safe distance. In no case shall this distance be less than 500 feet. In any case, the required distance shall be paced or measured. . . ."

"*Order 668*—BLASTING IN CITIES AND VILLAGES.

"When blasting operations are conducted within the confines of villages and cities, shots shall be screened with blasting mats to hold or catch flying material. Shots shall be spaced, located, and charged with explosives in a manner as to minimize the danger of flying material. Short-interval-delay firing shall be used in all inhabited areas. Permission for the use of explosives is subject to the approval of the proper local authorities."

"*102.57, Stats.*—VIOLATIONS OF SAFETY PROVISIONS, PENALTY.

"Where injury is caused by the failure of the employer to comply with any statute or any lawful order of the commission, compensation and death benefits as provided in this chapter shall be increased 15 per cent. Failure of an employer reasonably to enforce compliance by employees with such statute or order of the commission shall constitute failure by the employer to comply with such statute or order."

The record indicates that on the day in question Randerson affixed caps and wires to the dynamite; that he then strung wire some 200 to 240 feet from the pier in which the dynamite had been set to a barge owned by the employer. The blast was set off from that point. The commission indicated that the orders were violated in that the blasting was within the confines of Kimberly, and that no blasting mats were provided; that no shelter was available and that the blast was detonated from a point less than 500 feet from the pier. The record discloses that operations were carried on from both sides of the river. Two steel barges were used and were on the job. One of them was equipped with a shelter. Randerson did not choose to detonate the blast from the barge containing the shelter. The barge from which he operated was divided into compartments, access to which was through covered hatches. If the blast had been detonated from within one of the compartments with the hatch cover down the blaster would have been protected.

The record further discloses that blasting mats were available and were offered to Randerson. He had used the mats prior to the date in question. The record also discloses that up to 800 feet of wire were available for the blaster. Prior to the blast it was suggested that Randerson was not a sufficient distance away from the pier. He was told that the barge could be moved. He did not take advice and his injuries and resulting death were caused by his own negligence. The employer's instructions were specific that the blaster, certified to by the commission, was to be in charge of the blasting and that employees should co-operate with him. Randerson was instructed that he was in charge of all blasting operations and he was instructed to use mats for all blasting where required.

It may well be true that sufficient wire and blasting mats were not on the pier prior to the blast, but they were on hand

among the equipment being used on the job. They could have been delivered to the pier at Randerson's request by barge or by truck. Randerson was in charge of blasting operations. He was the only one who could direct that the available equipment be used. He was advised to use some of it, but he spurned the advice. The barges were equipped with motors and could have been moved to any position on the river.

The finding by the commission that a shelter, blasting mats, and sufficient wire were not furnished by the employer is not supported by substantial evidence in view of the entire record. In *Wisconsin Bridge & Iron Co. v. Industrial Comm.* 273 Wis. 266, 269, 77 N. W. (2d) 413, this court said:

"It is well established that an employer may not be subjected to a penalty where the injury is the result of negligent or inadvertent acts of its employees. *Saxe Operating Corp. v. Industrial Comm.* (1929), 197 Wis. 552, 222 N. W. 781."

Under that rule the order of the commission must be reversed.

*By the Court.*—Judgment reversed. Cause remanded, with instructions to enter judgment setting aside the commission's order for increased compensation.