Thurl S. HARBER, Employer,
UNITED STATES FIDELITY & GUARANTY
COMPANY, Insurance Carrier
v. Syble Gene SHOWS et al

76-392                           553 S.W. 2d 282

Opinion delivered July 18, 1977
(In Banc)

*Barber, McCaskill, Amsler & Jones,* for appellants.

*Brockman, Brockman & Gunti,* for appellees.

DARRELL HICKMAN, Justice. This is an appeal of a Workmen's Compensation case that resulted in an award of compensation to the dependents of Marby Shows, Jr., deceased, and a 15% penalty for violation of a safety regulation. The Circuit Court of Pulaski County affirmed all the findings and orders of the Commission.

The appellant-employer, Thurl S. Harber, and his insurance company, United States Fidelity & Guaranty Company, appealed the decision alleging three errors: the claim of the dependents was not controverted and, therefore, attorney fees were erroneously awarded appellees; a penalty was awarded in error because Shows' death was the result of his own negligence; and, the regulations allegedly violated were federal regulations, not official state regulations as defined in Ark. Stats. Ann. § 81-1310 (d) (Supp. 1975).

We agree with the appellants that the claim was not controverted. The appellants' insurance carrier, upon notification of the claim, immediately notified the Commission that the claim was accepted for compensation and a hearing was requested only to determine the dependency of the children. Shows had been married twice and had two children by each marriage. He also had a stepchild. It was ultimately determined that all four children and the stepchild were dependents. Each child received an equal share of the benefits (three children received two cents less per week).

There was obviously a conflict of interest in the claim of the children and the carrier was merely asking for a fair distribution of the money which was admittedly owed. A fair apportionment of the benefit money was made and the decision was fair in this regard. The referee and the Commission found that the claim was controverted in part and, therefore, awarded the appellees some attorney fees. The lower court affirmed the finding. We find no evidence to justify such a finding. The carrier acted in good faith, did not controvert the claim, but merely asked for an apportionment and a hearing on dependency. Therefore, this decision will be reversed.

Shows, a painter, fell from a scaffold while painting the Arkansas Interstate 430 Bridge and drowned. The referee

and the Commission found that Shows would not have met his death if he had been wearing a life jacket; that if ring buoys had been readily available he could have, in all probability, been saved; and, that if guardrails and toe boards had been installed on the scaffold from which he fell, in all probability he would not have died. We agree with these findings. The appellants argued to the Commission and on appeal that Shows' negligence caused his own death. The Commission did not specifically rule on this argument. We feel the finding that the cause of Shows' death was safety violations necessarily rejects this argument.

However, the referee and the Commission went further and concluded that the employer's failure to comply with the Occupational Safety and Health Act of 1970, an "official regulation," was a substantial cause of Shows' death, and, therefore, awarded a 15% penalty. See 29 U.S.C.A. § 651 et. seq. Arkansas law provides that when an injury or death is caused in substantial part by the failure of an employer to comply with any Arkansas statute or official regulation, the benefits may be increased 15%. See Ark. Stats. Ann. § 81-1310(d) *supra*. The referee and the Commission found that reference in the Arkansas statute to "official regulations" includes the OSHA law enacted by the United States Congress. We disagree with this finding. The Arkansas statute refers to "any Arkansas statute or official regulation." Apparently, it was the intention of the legislature, by preceding statute with "Arkansas," to also mean only official regulations of Arkansas. Furthermore, since the statute is penal in nature, we apply the construction rule that is strictly in favor of those upon whom a penalty may be imposed. Nothing will be taken as intended that is not clearly expressed. See *Fiser v. Clayton,* 221 Ark. 528, 254 S.W. 2d 315 (1953). An intention to include federal regulations is not clearly expressed in the Arkansas statute. Also, the finding by the Commission that results in applying federal regulations that may be enacted in the future could well be an unlawful delegation of legislative authority. See *Crowly v. Thornbrough, Comm'r of Labor,* 226 Ark. 768, 294 S.W. 2d 62 (1956). (OSHA was passed after the Arkansas statute.) Therefore, we find the basis of the penalty award in error, and this decision will be reversed.

The attorney for the appellees also tried to proceed before the referee on the theory that the employer had failed to provide a safe place to work in violation of Ark. Stats. Ann. § 81-108 (Repl. 1960). After the hearing before the referee, the appellees tried to offer into evidence regulations of the Arkansas Labor Department which would have been relevant to this case. Neither the referee nor the Commission ruled on whether or not the appellees could proceed under Arkansas law, but instead based their decisions on violations of the federal regulations. This case will be remanded for a rehearing to determine whether or not the appellees may be entitled to compensation for violation of Arkansas regulations or law.

This case is remanded to the circuit court with directions to further remand the case to the Commission for proceedings not inconsistent with this opinion.

Reversed and remanded.

FOGLEMAN and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. I dissent only to that portion of the majority opinion directing the Commission to hold a rehearing to determine whether or not appellees may be entitled to a penalty for violation of the Arkansas Safety regulations. There was a procedural question before the Commission of whether the claimants had given a proper notice of the alleged violation of the Arkansas Safety regulations. In the absence of such a notice, it should be within the discretion of the Commission to permit the pleadings to be amended.

Furthermore, I dissent because the majority under its views in remanding to the Commission should reach appellants' contention that "*a penalty may not be awarded where the injury to the employee is the result of the employee's negligent intervening act or willful misconduct.*" The majority sloughs this contention off with the following statements, to wit:

". . . The appellants argued to the commission and on appeal that Shows' negligence caused his own death.

The Commission did not specifically rule on this argument. We feel the finding that the cause of Shows' death was safety violations necessarily rejects' this argument. . . ."

The record here reveals that Shows was the job superintendent at the time of his death. Every witness called with knowledge of the working conditions on the job testified that the employer regularly held safety meetings and that when the employer was present, the equipment was used but that as soon as the employer left the job the employees regularly removed the safety equipment. The record is uncontradicted that Shows, without consultation with the employer, drove to Russellville on the day of his death to get the scaffold from which he fell. The record is also undisputed that life lines and life jackets were on the job and could have been used by Shows had he so desired. Jerry Hooten testified that he had previously painted from the same scaffold and that while so doing, he used a life line.

In *L. G. Arnold Inc.* v. *Industrial Commission*, 2 Wis. 2d 186 85 N.W. 2d 821 (1957), the issue was whether a 15% additional penalty could be awarded to an employee in charge of blasting operations that spurned the safety devices furnished by the employer. In holding that the employee could not recover the additional penalty, the court said:

"It is well established that an employer may not be subjected to a penalty where the injury is the result of negligent or inadvertent acts of its employees. *Sage Operating Corp.* v. *Industrial Comm.*, 197 Wis. 552, 222 N.W. 2d 781 (1929)."

Here the employer admits that it is liable for Workmen's Compensation benefits but contests its liability for the additional 15% penalty assessable for violation of a safety regulation. To say that it is proper to award the 15% penalty against an employer when the employee's drowning results from the spurning of such ordinary safety devices as life jackets and life lines goes beyond the clearly expressed intent of the Workmen's Compensation Act, Ark. Stat. Ann. § 81-1310(d) (Supp. 1975), which provides:

*"Where an injury or death is caused in substantial part by the failure of an employer* to comply with any Arkansas statute or official regulation pertaining to the health or safety of employees compensation or death benefits provided for by this Act shall be increased by fifteen per centum (15%)." [Emphasis Mine.]

The foregoing section of the Workmen's Compensation Act has now been amended to read:

*"Where established by clear and convincing evidence that an injury or death is caused in substantial part by the failure of an employer* to comply with any Arkansas statute or official regulation pertaining to the health or safety of employees, compensation or death benefits provided by this Act shall be increased by fifteen percent (15%)." [Emphasis Mine.]

It has long been the rule in this State that penal statutes must be strictly construed in favor of those upon whom the burden is sought to be imposed and nothing will be taken as intended that is not clearly expressed, *Fiser* v. *Clayton*, 221 Ark. 528, 254 S.W. 2d 315 (1953).

It should be a very simple matter for the majority to either rule on the matter head-on or to at least advise the parties that the issue is a fact question in the event of another hearing before the Commission.

For the reasons stated, I respectfully dissent.

FOGLEMAN, J. joins in this dissent.