Teresa Jean ROBERTS, Widow of
Ronald J. ROBERTS, Deceased, Employee
*v.* SMITH FURNITURE AND APPLIANCE
COMPANY, Employer, and FARMERS INSURANCE
COMPANY, Insurance Carrier

77-349                                    567 S.W. 2d 947

Opinion delivered July 3, 1978
(In Banc)

*Davis, Douglas & Penix, P.A.,* for appellant.

*Jones, Gilbreath & Jones,* for appellees.

CONLEY BYRD, Justice. The facts in this case are not in dispute. The decedent Ronald J. Roberts was electrocuted when a television antenna he was erecting for his employer, appellee, Smith Furniture and Appliance Company, came in contact with a power line. The employer has accepted this case as compensable and has paid and is paying death benefits pursuant to Ark. Stat. Ann. § 81-1315 (Repl. 1976). The issue here is whether the claimants, the widow and minor child, can collect in addition to the regular allowances for death benefits, an additional 15% penalty pursuant to Ark. Stat. Ann. § 81-1310(d) (Supp. 1975). That statute provides:

> "(d). Violation of Safety Provisions. Where an injury or death is caused in substantial part by the failure of an employer to comply with any Arkansas statute or official regulation pertaining to the health or safety of employees, compensation or death benefits provided for by this Act [§§ 81-1301 — 1349] shall be increased by fifteen per centum (15%)."

The particular safety statute the employer is alleged to have violated is Acts 1963, No. 148 [Ark. Stat. Ann. §§ 81-1401 — 81-1410 (Repl. 1976)]. The scope and purpose of the Act, *supra,* is set forth in section 1, Ark. Stat. Ann. § 81-1401 as follows:

"Scope and Purpose. — This act [§§ 81-1401 — 81-1410] provides for the minimum precautions to be taken during any excavation, demolition, transportation of equipment, construction, repair or operation in the proximity of overhead high voltage lines. The purpose of this act is to provide for the protection of persons engaged in work of any nature in the vicinity of overhead high voltage lines, and to define the conditions under which work may be carried on safely, and the procedures and means by which these conditions may be created. [Acts 1963, No. 148, § 1, p. 399.]"

Under definitions Ark. Stat. Ann. § 81-1402 (Repl. 1976), we find the following:

"(1) 'Shall' is to be understood as mandatory.
(2) 'Should' is to be advisory.
(3) The term 'High Voltage' as used in this act means a voltage in excess of 440 volts, measured between conductors, or between the conductor and the ground.
. . ."

Section 5, Ark. Stat. Ann. § 81-1405 (Repl. 1976) provides:

"Prohibited Acts. — No person shall require or permit any employee to perform any function in proximity to overhead high voltage lines; to enter upon any land, building, or other premises, and there to engage in any excavation, demolition, construction, repair or other operations, or to erect, install, operate or store in or upon such premises any tools, machinery, equipment, materials, or structures, including house moving, well drilling, pile driving or hoisting equipment, unless and until danger from accidental contact with said overhead high voltage lines has been effectively guarded against in the manner hereinafter prescribed."

Section 6, Ark. Stat. Ann. § 81-1406 (Repl. 1976), in so far as here applicable provides:

"Clearance or safeguard required when working near high voltage lines — Relocation of lines. — The

operation, erection or transportation of any tools, machinery or equipment, or any part thereof capable of vertical, lateral, or swinging motion; the handling, transportation, or storage of any supplies, materials or apparatus or the moving of any house or other building, or any part thereof, under, over, by or near overhead high voltage lines, shall be prohibited, if at any time during such operation, transportation or other manipulation it is possible to bring such equipment, tools, materials, building or any part thereof within six feet (6') of such overhead high voltage lines, . . ."

The penalty for violating the act is set forth in Section 10, Ark. Stat. Ann. § 81-1410 (Repl. 1976), as follows:

"A person who violates this act shall be fined not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000), or imprisoned not more than one year, or both."

The Commission under its findings of facts stated:

"It is virtually undisputed that two employees of respondent employer were working in close proximity to high voltage lines where the television antenna they were erecting came into contact with a line causing the death of Ronald J. Roberts and seriously injuring Frank Posey. Mr. Roberts and Mr. Posey were the employees erecting the antenna. Apparently neither of the employees knew of the presence of the line at the time of the accident. It also appears that Mr. Claude Smith, owner of Smith Furniture and Appliance Company, was not aware of the lines at the time of the accident.

At the risk of oversimplification, it can be said that the crucial question to be resolved is whether or not it is necessary, in order to find a violation of a safety provision here, that the employer have some knowledge that a 'violation' is occurring. Restated, the question to be resolved is the standard of proof which must be met before an employer can be found to have violated such a provision. Is there liability without fault or strict liability? Is simple negligence sufficient? Is actual

knowledge that a violation is occurring required? The cases and textwriters unfortunately provide little guidance."

The Commission then concluded that the Acts of 1963, No. 148 imposed an affirmative duty upon an employer to discover or investigate the circumstances under which the work was being done and assessed the 15% penalty.

The circuit court reversed the Commission on the basis that the employer could not be assessed the penalty in the absence of knowledge on the part of the employer from which affirmative action or nonaction by the employer contrary to safety requirments may be inferred. We agree with the trial court as respects the particular safety statute involved.

If we should accept the appellant's position that Acts of 1963, No. 148 imposes an affirmative duty on an employer to discover or investigate the circumstances under which the work is being done, it would then follow that every time an employee comes into contact with a "high voltage" line, the employer could be subject to a fine of not less than $100 or imprisoned for not more than one year or both. After all the act, Ark. Stat. Ann. § 81-1402, *supra,* states that the term "*shall*" is to be understood as mandatory and the penalty provision, Ark. Stat. Ann. § 81-1410, *supra,* provides that a person who violates this act *shall* be fined no less than $100 or imprisoned not more than one year or both. We cannot believe that the General Assembly intended to place such a stiff penalty upon the employers of this State in the absence of knowledge on the part of an employer from which affirmative action or nonaction may be inferred.

Appellant argues that, since Ark. Stat. Ann. § 81-1304 (Repl. 1976), provides that it shall not be necessary for the employee to plead or prove freedom from contributory negligence, that Ark. Stat. Ann. § 81-1310(d) in effect places strict liability upon an employer for any injury and that the employer should be liable for any compensation which the employee is entitled to under the act. We find no merit in this contention. In *Harber, et al v. Shows, et al,* 262 Ark. 161, 553 S.W. 2d 282 (1977), we stated:

". . . Furthermore, since the statute is penal in nature, we apply the construction rule that is strictly in favor of those upon whom a penalty may be imposed. Nothing will be taken as intended that is not clearly expressed. . . ."

It follows that the burden was upon those seeking the penalty to show that the employer had failed to comply with the safety statute involved. This appellant failed to do so according to the findings of fact by the Commission.

Finally appellant contends that even though we determine that an employer must have knowledge of the existence of the power line, the Commission should have the ability to infer that such knowledge existed. This assertion by appellant is not supported by the Commission's findings of fact. In fact as pointed out above, the Commission found as a fact that the employer had no knowledge of the high voltage power line.

The record shows that the employer had cautioned his employees to watch for high power lines. Appellant takes this caution by the employer and the fact that houses in general have power lines and argues that any time a television antenna is being erected it is capable of coming into contact with such high voltage power lines. In making this argument appellant fails to take into consideration that Acts 1963, No. 148, applies only to power lines in excess of 440 volts. The electrical service lines to residences, however, do not ordinarily exceed 220 volts.

Affirmed.

GEORGE ROSE SMITH, HOLT and HOWARD, JJ., dissent.

GEORGE HOWARD, JR., Justice, dissenting. I cannot join the majority in sustaining the circuit court in reversing the holding of the Workmen's Compensation Commission which places an affirmative duty upon an employer to discover or investigate the circumstances under which his employees are required to perform any function in the proximity to overhead high voltage lines to the end that precautionary steps

may be taken for the safety and welfare of the employees. The applicable statute is Ark. Stat. Ann. § 81-1405 (Repl. 1976), which provides in relevant part as follows:

> "81-1405. PROHIBITED ACTS. — No person shall require or permit any employee to perform any function in proximity to overhead voltage lines; to enter upon any land, building or other premises, and there to engage in any excavation, demolition, construction, repair or other operations, or to erect, install, operate or store in or upon such premises any tools, machinery, equipment, materials, or structures, including house moving, well drilling, pile driving or hoisting equipment, unless and until danger from accidental contact with said overhead high voltage lines has been effectively guarded against in the manner hereinafter prescribed."[1]

The stated purpose of the statutory safety provision is stated in Ark. Stat. Ann. § 81-1401 (Repl. 1976), which is as follows:

> "This act . . . provides for the minimum precautions to be taken during any excavation, demolition, transportation of equipment, construction, repair or operation in the proximity of overhead high voltage lines. *The purpose of this act is to provide for the protection of persons engaged in work of any nature in the vicinity of overhead high voltage lines,* and to define the conditions under which work may be carried on safely, and the procedures and means by which these conditions may be created." (Emphasis added)

The Administrative Law Judge found that the death of

---

[1]Ark. Stat. Ann. § 81-1310(d) (Repl. 1976), in relevant part, provides as follows:

> "(d) VIOLATION OF SAFETY PROVISIONS. Where established by clear and convincing evidence that an injury or death is caused in substantial part by the failure of an employer to comply with any Arkansas statute or official regulation pertaining to the health or safety of employees, compensation or death benefits provided for by this Act shall be . . . [increased] by fifteen per cent (15%). . . ."

Ronald J. Roberts was caused in substantial part by the failure of the appellee-employer to comply with the statutory provisions involving safety requirements, prohibitions and precautions when employees are working in the vicinity of high voltage lines and, accordingly, awarded the additional 15% benefit.

On May 10, 1977, the full Commission, after reviewing the case pursuant to an appeal taken by appellees,[2] sustained the holding of the Administrative Law Judge.

The appellees appealed the decision of the full Commission to the Circuit Court of Benton County. The trial court, in reversing the Commission, stated in material part as follows:

"There is no question that the death of Ronald J. Roberts was caused in substantial part by his coming in contact with a high voltage power line. Nor is there any question that Roberts and his co-employee were not protected in the manner required by law. It is undisputed that neither Roberts, his co-employee, nor the employer knew of the existence and location of the line.

"The question at issue, then, is whether the employer is liable for the penalty from violation of the safety regulation when he is not aware of the violation . .

". . . [T]he injunction not to 'require or permit' employment in violation of safety regulations under Arkansas law require proof of some element of knowledgeable conduct, from which affirmative action or non-action by the employer contrary to safety requirements may be inferred."

The majority, in affirming the trial court and, thus, rejecting the holding of the Commission, makes the following observation to justify its action:

---

[2]Farmers Insurance Company is the insurance carrier for Smith Furniture and Appliance Company.

"If we should accept the appellant's position that Acts 1963, No. 148 imposes an affirmative duty on an employer to discover or investigate the circumstances under which the work is being done, it would then follow that every time an employee comes into contact with a 'high voltage' line, the employer must be fined not less than $100 or imprisoned for not more than one year or both. After all the act, Ark. Stat. Ann. § 81-1402, *supra,* states that the term *"shall"* is to be understood as mandatory and the penalty provision, Ark. Stat. Ann. § 81-1410, *supra,* provides that a person who violates this act *shall* be fined not less than $100 or imprisoned not more than one year or both. We cannot believe that the General Assembly intended to place such a stiff penalty upon the employers of this state in the absence of knowledge on the part of an employer from which affirmative action or nonaction may be inferred.[3]

"Appellant argues that, since Ark. Stat. Ann. § 81-1304 (Repl. 1976), provides that it shall not be necessary for the employee to plead or prove freedom from contributory negligence, that Ark. Stat. Ann. § 81-130(d) in effect places strict liability upon an employer for any injury and that the employer should be liable for any compensation which the employee is entitled to under the act. We find no merit in this contention. In *Harber, et al v. Shows, et al,* 262 Ark. 161, 553 S.W. 2d 282 (1977), we stated:

' . . . Furthermore, since the statute is penal in nature, we apply the construction rule that is strictly in favor of those upon whom a penalty may be imposed. Nothing will be taken as intended that is not clearly expressed. . . . '

It follows that the burden was upon those seeking the penalty to show that the employer had failed to comply

---

[3]By injecting the criminal part of the safety Act, when in fact, it is not relevant to the issue before the Court, the majority not only clouds the real issue, but creates its own straw man at the appellate level to justify the conclusion reached.

with the safety statute involved. This appellant failed to do so according to the findings of fact by the Commission."

The pivotal point in the majority's action in reversing the Commission and sustaining the trial court is the conclusion drawn by the majority that inasmuch as there is a criminal provision included in the safety statute, the entire safety statute must be strictly construed, resulting in a benefit to the employer at the detriment of the widow and children of the decedent.

I submit that the majority's posture is not well founded for several reasons.

First, it is apparent that the safety statute in question is not a strictly criminal statute, but is remedial in part and criminal in part. It is clear, beyond debate, that the Commission does not have jurisdiction to enforce the criminal provisions of the safety statute. The criminal portion of the statute is enforcible either in the proper municipal court or a circuit court where the State of Arkansas, through its Attorney General or Prosecuting Attorney, would be a party to the action either to recover a fine and/or impose time in the county jail not to exceed one year. Thus, the Commission is concerned simply with the remedial aspect of the statute and therefore a liberal construction is applied rather than a strict one.

In *State* v. *Miles Laboratories,* 365 Mo. 350, 282 S.W. 2d 564 (1955), the court stated:

".... [T]he primary rule in statutory construction is to ascertain and give effect to the legislative intent . . . and remedial statutes enacted in the interest of the public welfare should be construed with a view to suppression of the mischief sought to be remedied."

In *St. Louis* v. *Carpenter,* (Mo.) 341 S.W. 2d 786, the Court said:

"Statutes enacted for the protection of life and

property, . . . are considered remedial in nature and are generally given a liberal construction.

"Where a statute is both remedial and penal, remedial in one part while penal in another, it should be considered a remedial statute when enforcement of the remedy is sought and penal when enforcement of the penalty is sought."

In 73 Am. Jur. 2d, page 276, § 11, it is provided in material part as follows:

"A distinction has been made between a penalty or forfeiture which accrues to the party aggrieved, and a penalty prescribed as criminal punishment, so that where the penalty or forfeiture prescribed by the act is made to accrue to the party aggrieved, to be recovered by private action, the statute has been regarded as remedial."

73 Am. Jur. 2d, page 276, § 12, provides in material part:

"Strictly speaking, a penal statute is one which imposes punishment for an offense committed against the state . . . "

It is clear from the safety statute involved that the legislative intent is to provide for the minimum precautions to be taken by an employer for the protection of his employees engaged in work of any nature in the vicinity of overhead high voltage lines. The Commission's ruling implements this clear legislative intent while the majority's opinion, by grafting a restrictive interpretation on the safety statute, simply frustrates the legislative will.

Secondly, the ground upon which the majority sustains the circuit court was not litigated either before the Commission or the trial court. Moreover, the majority on its own makes the criminal portion of the safety statute an issue. This is not only inconsistent with our well accepted rule that an issue not raised below may not be asserted for the first time

on appeal, but has the appearance of placing the Court in the posture of an advocate which is clearly contrary to the concept of appellate review.

The trial court found:

"The question at issue, then, is whether the employer is liable for the penalty from violation of the safety regulations when he is not aware of the violation. . . ."

The appellee-employer seeks to avoid any responsibility in this case for the safety of his employees-deliverymen by asserting that he had never been to the customer's home in Gentry, Arkansas, where the antenna was being erected, and that he did not "require" or "permit" his employees to erect the antenna in the proximity to an overhead voltage line, as he had no knowledge that there were any high voltage lines in close proximity to the customer's house. Appellee-employer's argument possesses all of the characteristics of *petitio principii*, stated differently, begging the question or arguing in a circle. Although appellee-employer's argument is intended to convey the notion or the idea that the circumstances surrounding the sale and installation of the antenna justified no action on his part in the compliance with the safety provisions of the Act, it is an attempt to cover plain, obvious and existing facts that demonstrated that a potential hazard existed which the Act was designed to minimize. For example, appellee-employer testified as follows:

"A. And, ah, but yet — about all I do is to caution them and, ah, of course, I, an — things like this I wouldn't have happened for anything, but, as, as far as anything particular, you know, like schooling, of course, putting up an antenna is just common sense, I think anybody can do it. But, ah, I didn't do anything particularly different.

"Q. Did you ever personally advise Ronald Roberts of the procedure to be used?

"A. No."

It goes without saying that houses in general, and those in particular with television sets and antennas of the type[4] sold by appellee-employer, have high voltage lines which are used to supply electricity to such houses and appellee-employer should have readily foreseen the existence of a possible hazard. It is clear from the evidence that appellee-employer took no action to provide for the safety of his employees, nor did he take any action to disclose the location of any voltage lines. Indeed, if, in the judgment of the appellee-employer, a personal inspection of the premises would have worked a financial hardship, concern for the protection and welfare of his employees would have, in the very least, prompted an inquiry of the customer, at the time the antenna was purchased, about the location of high voltage lines in the proximity of the customer's house.

Frank Posey testified as follows:

"Q. Had your employer ever advised you to take any precautions when raising TV antennas?

"A. Ah, yes, I had been told on different occasions to be careful. I've even been told before to be careful of power lines. It would, ah — I've had them say be careful you don't wnat to get those things into a power line."

Frank Posey further testified he and his former associate were not supplied rubber or insulated bloves, helmets, insulated tools or rubber matting for the insulation of voltage lines or antenna poles; and that during his four years of employment with appellee-employer, the question of de-energizing electrical lines going into houses where he installed antennas was never considered, although he had installed anywhere from ten to twelve a year.[5]

In *Smith, et al* v. *Aaron,* 256 Ark. 414, 508 S.W. 2d 320, we made the following observation in discussing what standards of safety an employer is required to adhere to for the protec-

---

[4]The employee testified "it was a dual antenna, it pointed two different directions and the objects pointing in two directions had a seven foot span."

[5]Frank Posey, the co-employee of the decedent, lost his left hand as a consequence of the incident involving high voltage lines.

tion of his employees when confronted with the statutory scheme in question and a standard based upon custom and tradition:

". . . We hold that when a legislative enactment, as here, prescribes the minimum standards for the safety of an employee in mandatory language then such requirements supersede and render irrelevant any evidence as to custom and usage. To hold contra would deprive the statutory scheme, as devised by our legislature, of its purpose and effectiveness.

"Even in the absence of statutory standards there is authority that '. . . . industry cannot be permitted to establish its own uncontrolled standard by adopting careless methods to save time, effort and money.' . . . "

In *Holiday Inns of America, Inc.* v. *Wilson,* 253 Ark. 915, 489 S.W. 2d 806 (1973), we affirmed the Commission's award of the penalty for the employer's violation of the Act in question where the employee was injured when the metal flagpole he was helping to erect came in contact with overhead electric lines. It was pointed out in *Wilson* that the employer had selected the flagpole, prepared the base for its erection under the electrical lines, directed its erection, assisted the employee in guiding it into the base and had knowledge of the overhead electric lines. This Court did not see fit to raise on its own initiative whether a strict or liberal interpretation should be placed upon the Act. I submit that *Wilson* is not materially different from the facts in the instant case. For example, the appellee-employer is engaged in the electrical appliance business and he knew or should have known that his customer had to have access to electrical energy in order to make use of the appliance being purchased, the appellee-employer personally obtained the order from the customer and placed the delivery order on the company's bulletin board and, according to the policy of the store, which was initiated by the employer, the decedent and Frank Posey, deliverymen, obtained the order from the bulletin board, selected the merchandise as indicated on the written order prepared by the employer and proceeded to Gentry, Arkansas, for the installation of the antenna in accordance with the

directions of appellee-employer. The evidence in the record reflects that neither of the employees saw the overhead voltage line, nor were they cautioned of its existence by anyone.

The majority concludes its opinion by stating that "appellant has failed to take into consideration that the Safety Act applies only to power lines in excess of 440 volts. The electrical service lines to residences, however, do not ordinarily exceed 220 volts." Again, the majority injects an issue that was neither raised before the Commission, the trial court, nor in the briefs filed by the parties. Moreover, the majority has resorted to speculation as to the number of volts involved since the record does not reflect whether the power lines involved were either 440 volts or 220 volts. I submit that by virtue of the death of appellant's husband, assuming, for the sake of argument, that only 220 volts were involved, as surmised by the majority, it is beyond debate that 220 volts can be just as fatal as 440 volts.

In 82 C.J.S. Statutes, § 388, page 921, it is provided in pertinent part as follows:

> "Where necessary to effectuate the legislative intent, remedial statutes will be construed to include cases within the spirit or reason, although outside the letter, of the statute, and to exclude cases within the letter, but outside the reason. . . . "

Finally, the Arkansas Reports are replete with decisions by this Court holding that administrative agencies are presumably equipped or informed by experience to deal with a specialized field of knowledge whose findings carry the authority of expertness which courts do not possess and, therefore, must respect. This recognition has been asserted as the principal basis for the limited scope of judicial review of administrative action in the refusal of the courts to substitute their judgment and discretion for that of the administrative agency. *Gordon v. Cummings, et al*, 262 Ark. 737 (1978); *White County Guaranty Savings & Loan Assn., et al v. Farmers & Merchants Bank of Des Arc, Arkansas*, 262 Ark. 893 (1978); *Northwest Savings & Loan Assn., et al v. Fayetteville Savings & Loan Assn., et al*, 262 Ark. 840 (1978).

I would reverse the Circuit Court of Benton County and reinstate the holding of the Workmen's Compensation Commission.

I am authorized to state that Justices SMITH and HOLT join in this dissent.