# FRANKLIN COLLIER FARMS *v.* Freddie Lee CHAPPLE

CA 85-509                                    712 S.W.2d 334

Arkansas Court of Appeals
Division I
Opinion delivered July 9, 1986

*Eldridge & Eldridge, P.A.*, by: *John D. Eldridge*, for appellant.

*Smith & Muhammed, P.A.*, by: *Wali Muhammed*, for appellee.

JAMES R. COOPER, Judge. This is an appeal of an order of the Workers' Compensation Commission requiring the appellant to pay a fifteen-percent penalty under Ark. Stat. Ann. § 81-1310(d) (Repl. 1976). The appellant raises three issues on appeal: (1) there is no substantial evidence to show the employee's death was not the result of his own contributory negligence; (2) there is no substantial evidence to support the finding of a safety violation; and (3) the appellee is not the real party in interest, as the law provides for the penalty to be paid to the Second Injury Fund, and therefore, she has no standing to bring this action. We find no merit in any of these contentions.

The appellee's husband died by electrocution on October 24, 1984, during the course of his employment with the appellant. His death was the result of moving a grain auger without first lowering it to clear some high-voltage lines. These lines were approximately thirty feet above the ground and forty-nine feet from the grain storage bin where the decedent was working. The auger was capable of being lowered to within six feet of the ground. The appellant's manager instructed the men who were moving the auger, including the decedent, to lower it first. He then left the area for a few minutes. For some reason, the men

failed to lower the auger, resulting in the fatal accident. The manager testified that he would not have allowed the men to move the auger if he had known they were not going to lower it. The evidence clearly showed that the workers knew the reason that the auger was to be lowered was to keep it out of the electrical lines.

It was undisputed that the only precautions taken by the appellant to prevent any contact of the auger with the electrical wires were the oral warnings given by the manager and the signs posted on the side of the auger, warning that it was illegal to operate the auger within ten feet of electrical lines. The auger was not insulated in any manner, nor were any mechanical barriers put up to prevent the auger from hitting the wires.

There was never any controversion of the claim for death benefits. The appellant did, however, controvert the action brought by the appellee for collection of a penalty, contending first that the appellee had no standing to bring the action and, second, that there had been no violation of any safety statute. The Administrative Law Judge determined that the decedent's death resulted from his own negligence and not from any violation of safety laws by the appellant. The Commission reversed, finding that the appellee had proved by clear and convincing evidence that her husband's death was caused in substantial part by the appellant's violation of safety statutes.

On appeal, this court is required to review the evidence in the light most favorable to the Commission's decision and to uphold that decision if it is supported by substantial evidence. Ark. Stat. Ann. § 81-1325 (Supp. 1985). In order to reverse a decision of the Commission, we must be convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *Office of Emergency Services* v. *Home Insurance Co.*, 2 Ark. App. 185, 618 S.W.2d 573 (1981). The question presented to this Court is not whether the evidence would support findings contrary to those made by the Commission, but whether the evidence supports the finding made by the Commission. *Reynolds Mining Co.* v. *Raper*, 245 Ark. 749, 434 S.W.2d 304 (1968). Even if the decision of the Commission is against the preponderance of the evidence, we will not reverse where its decision is supported by substantial evidence. *Hawthorne* v. *Davis*, 268 Ark. 131, 594 S.W.2d 844

(1980).

■ The appellant first contends that there is no substantial evidence to show that the death was not the result of the decedent's contributory negligence. It cites the case of *Roberts* v. *Smith Furniture and Appliance Co.*, 263 Ark. 869, 567 S.W.2d 947 (1978) for this proposition. We do not find *Roberts* to so hold. *Roberts* merely stands for the proposition that the employer must have some knowledge of the violation before the penalty can apply. While § 81-1310(d), being penal, is to be construed in favor of those upon whom a penalty is to be imposed, *Roberts*; *Harber* v. *Shows*, 262 Ark. 161, 553 S.W.2d 282 (1977), this does not mean that the doctrine of contributory negligence applies. Indeed, contrary to the appellant's statement, we find nothing in *Roberts* to indicate that § 81-1304 (Supp. 1985) (providing that the employee's contributory negligence is not to be taken into account) does not apply to proceedings for penalties under § 81-1310(d). The appellant has cited us no case so holding, nor have we found any. Rather, the cases imply that the employee's misconduct is generally not a factor. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 69.24 at 13-126 (1982). Therefore, we find no support for the appellant's contention that the employee's contributory negligence would prevent application of a penalty.

The appellant also contends that there is no substantial evidence to support the Commission's decision that the employee's death was caused in substantial part by the failure of the appellant to comply with Ark. Stat. Ann. § 81-1401 *et seq.* Arkansas Statutes Annotated § 81-1401 (Repl. 1976) provides, in part: "This act [§§ 81-1401—81-1410] provides for the *minimum precautions* to be taken during any . . . transportation of equipment, . . . or operation in the proximity of overhead high voltage lines." (Emphasis added.)

Section 81-1405 (Repl. 1976) lists prohibited acts:

> No person shall require or permit any employee to perform any function in proximity to overhead high voltage lines; to enter upon any land, building, or other premises, and there to . . . erect, install, operate or store in or upon such premises any tools, machinery, equipment, . . . unless and until danger from accidental contact with said over-

head high voltage lines has been effectively guarded against in the manner hereinafter prescribed.

Section 81-1406 (Supp. 1985) provides:

> The *operation* of any tools, machinery or equipment, or any part thereof capable of vertical, lateral, or swinging motion; and . . . *transportation . . . of any . . . apparatus . . . .* or any part thereof *shall be prohibited, if at any time* during such operation, transportation or other manipulation *it is possible to bring such* equipment, tools, . . . or any part thereof *within ten feet* (10') *of such overhead voltage lines, except where* such high voltage lines have been effectively *guarded against* danger from accidental contact, *by either*:
>
> (1) the *erection of mechanical barriers* to prevent physical contact with high voltage conducters [conductors]; *or*
>
> (2) *De-energizing the high voltage conductors* and grounding where necessary. *Only in the case of either such exceptions may the ten foot (10') clearance required be reduced. . . .*
>
> If (1) and (2) are not practicable, in the opinion of the owner or operator, and it is necessary to temporarily relocate the high voltage conductors, . . . arrangements shall be made with the owner or operator of the overhead lines for such temporary relocation.
>
> (3) *In addition* to (1) and (2), *there shall be installed an insulated cage-type guard* or protective device, approved by the Commissioner of Labor, about the boom or arm of all equipment, except backhoes or dippers. [Emphasis added.]

This act clearly provides that, whenever the term "shall" is used, the action is mandatory. § 81-1402(1) (Repl. 1976).

■ While the appellant correctly points out that the act permits the substitution of other devices which "secure equally good result" for those specified in the act, it overlooks the fact that the same section provides that such are subject to the approval of the enforcing authority. *See* § 81-1403 (Repl. 1976). There is no

evidence that such approval was sought. The appellant did comply with §§ 81-1407 and -1408 (Repl. 1976 & Supp. 1985) in providing warning signs, however, we cannot say that the Commission's decision that these were insufficient to meet the requirements of this act was erroneous. It is undisputed that the appellant made no other attempts to comply with the statute. In light of the location of the auger at the time of the accident, it was clearly and foreseeably possible that the auger could come within ten feet of the high-voltage lines. The Commission's decision that the death was caused in substantial part by the appellant's failure to comply with a safety statute is therefore supported by substantial evidence.

The appellant's final contention is that the appellee has no standing to bring this suit.[1] The appellant contends that, because payment of the penalty goes to the Second Injury Fund, the Fund is the only entity allowed to enforce a penalty. While the appellant argues that Ark. Stat. Ann. § 81-1313(i)(2) (Supp. 1985) and § 81-1348 (Repl. 1976) require that the State Treasurer be made a party to this action, these sections only require that the Treasurer be made a party when an action for recovery is brought *against* the Fund. Here, no recovery is being sought against the Fund, rather the recovery sought is to be paid into the Fund.[2]

The appellee is entitled to bring this action because, as a general rule, determination of the existence of a safety violation is necessarily intertwined with, and a part of, the claimant's proof that the underlying claim is compensable. The real party in interest is the one who can discharge the claim which is brought, and not necessarily the one who is ultimately entitled to the benefits of the recovery. *Childs* v. *Philpot*, 253 Ark. 589, 487 S.W.2d 637 (1972); *House* v. *Long*, 244 Ark. 718, 426 S.W.2d 814 (1968): *accord* A.R.C.P. 17, Reporter's Note 2. The claimant in a workers' compensation case is the person who can discharge the claim, as it is based on, and is a part of, his or her

---

[1]  Arkansas's penalty statute, as of the time this claim was brought, appears to be unique in providing for payment of the penalty to one other than the claimant.

[2]  While the appellee argues that the Fund is basically a conduit, to which she must make application to receive payment of the penalty, we note that there is no authority in the Workers' Compensation Act supporting this contention. Payments from the Second Injury Fund are only made to previously injured workers who have been injured again. *See* § 81-1313(i) (Supp. 1985). The appellee's decedent does not fit into this category.

claim for compensation. This is so even though the recovery in this case goes to the Second Injury Fund.[3] Therefore, we find that the appellee had standing to raise this issue.

Affirmed.

CORBIN and MAYFIELD, JJ., agree.

---

[3] As of July 1, 1986, the penalty provided for in the Workers' Compensation Act will be paid to the claimant. 1986 Ark. 10 (2d Extra. Sess.)