Rose CROSBY *v.* MICRO PLASTICS, INC. and Travelers Insurance Co., Inc.

CA 89-294                                          785 S.W.2d 56

Court of Appeals of Arkansas
Division I
Opinion delivered March 7, 1990

*Frederick S. "Rick" Spencer*, for appellant.

*Michael E. Ryburn*, for appellee.

JUDITH ROGERS, Judge. The appellant, Rose Crosby, who was formerly employed by appellee, Micro Plastics, Inc., appeals from a decision of the Workers' Compensation Commission which denied her claims for wage loss disability, additional temporary total disability benefits, and the payment of certain medical expenses for treatment. We affirm in part, and reverse and remand in part.

On February 28, 1985, appellant sustained a compensable back injury when she was carrying a fifty pound tray of plastic nuts while employed by appellee. As a result of this injury, appellant was unable to work for three weeks, and temporary total benefits were paid from March 1 through March 25, 1985, when she was released by her physician, Dr. Larry Kelley, to return to work with a fifteen pound lifting restriction. Appellee also accepted payment of all medical bills for treatment provided by Drs. Kelley and John Tsang, to whom appellant had been referred by Dr. Kelley. Appellant continued in her employment with appellee until her termination in May of 1986. Appellant is currently unemployed.

In October of 1986, appellant filed a claim with the Commission alleging her entitlement to awards of temporary total benefits which were said to have occurred sporadically since March 1, 1985; permanent disability and wage loss benefits; and the payment of medical expenses associated with treatment

provided by Dr. Thomas E. Knox and Dr. Wilbur Giles. In an opinion dated May 16, 1988, an administrative law judge awarded appellant permanent partial disability benefits in relation to five percent of the body as a whole, but concluded that appellant was not entitled to wage loss benefits under Ark. Code Ann. § 11-9-522(b) (1987), or further temporary total benefits beyond March 25, 1985. Additionally, appellant's claim for the payment of medical expenses for treatment by Drs. Knox and Giles was denied based on a finding that she had failed to comply with the requisite procedure for a change of physicians. Upon review by the full Commission, the decision of the law judge was affirmed and adopted on April 13, 1989, with one Commissioner dissenting.

As her first issue on appeal, appellant claims as error the Commission's denial of wage loss benefits based upon the retroactive application of Act 10 of 1986, now codified as Ark. Code Ann. § 11-9-522(b) (1987). Pursuant to this provision, the Commission concluded that appellant was not entitled to wage loss benefits because she had resumed her job with appellee.

In the recent case of *Arkansas State Police* v. *Welch*, 28 Ark. App. 234, 772 S.W.2d 620 (1989), we held that the provision of Act 10, found in the above-mentioned code section, which precludes the recovery of wage loss benefits when the employee "has returned to work, has obtained employment, or has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his average weekly wage at the time of the accident," is substantive in nature, and thus is to be applied prospectively, and not to injuries occurring before the effective date of the act, July 1, 1986. In *Welch*,[1] we noted that under previous law, a claimant might suffer a wage loss capacity yet return to work earning higher wages than before the injury due to cost-of-living increases. *See City of Fayetteville* v. *Guess*, 10 Ark. App. 313, 663 S.W.2d 946 (1984). Here, the appellant's injury of February 28, 1985, occurred before the effective date of

---

[1] We note that the decision in *Welch* was an affirmance of the Commission's interpretation that this provision of Act 10 of 1986 was not to be retroactively applied. We now reverse the instant case because the Commission did not follow its own interpretation of the law which we previously affirmed in *Welch*.

the act; therefore, we agree with the appellant that the Commission erred by concluding that her claim for wage loss benefits was barred by Ark. Code Ann. § 11-9-522(b) (1987). Accordingly, we remand to the Commission for a determination as to whether appellant is entitled to wage loss benefits under the law as it existed as of the time of her injury. Inasmuch as we are remanding on this issue, we decline to address appellant's second argument on appeal in which she further claims entitlement to wage loss benefits.

As her third point on appeal, appellant contends, as stated in her brief, that "[t]he pre-existing degenerative disc disease, if any, did not disqualify a WCC claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which compensation is sought." However, there has been no finding that appellant's claim was disqualified on this basis, and moreover, appellee has raised no cross-appeal on the question as to permanent impairment.

Appellant next argues that the Commission erred by not allowing the change of physician to Dr. Knox, who referred her to Dr. Giles, thereby relieving appellee of the obligation to pay for medical treatment provided by them, or those under their direction. Based upon the appellant's testimony that she was initially followed by Dr. Kelley, as he was her private physician, the Commission determined that Dr. Kelley was a physician of her own choosing, and concluded that she was not entitled to the payment of expenses associated with the change of physician for her failure to comply with Ark. Code Ann. § 11-9-514(a)(1) (1987). Specifically, the Commission found that she changed physicians from Dr. Kelley to Dr. Knox without informing either the Commission or appellee, although she had been provided notice of her rights and responsibilities concerning a change of physician as required by Ark. Code Ann. § 11-9-514(c)(1) (1987).

■ Arkansas Code Annotated § 11-9-514(b) (1987) clearly provides that treatment or services furnished or prescribed by any physician other than the one selected according to the outlined procedures, except emergency treatment, shall be at the claimant's expense. *American Transportation Co.* v. *Payne*, 10 Ark. App. 56, 661 S.W.2d 418 (1983). In *Wright Contracting*

*Co.* v. *Randall*, 12 Ark. App. 358, 676 S.W.2d 750 (1984), we noted that under the present law, the Commission no longer has the broad discretion it once had to *retroactively* approve a change of physician, and that, absent compliance with § 81-1311 (now codified as Ark. Code Ann. § 11-9-514 (1987)), the employer is not liable for a new physician's services (emphasis in original). In this case, it is undisputed that the appellant did not request prior approval of the change of physicians and thus failed to comply with the procedures outlined by the statute. Therefore, the Commission did not err by denying her claim for expenses related to the change of physicians.

The appellant last argues that her healing period did not end until Dr. Giles gave her his impairment rating of five percent in 1988, and that she was entitled to further temporary total benefits. We disagree.

A claimant's healing period ends when the underlying condition causing the disability has become stable, and if nothing further in the way of treatment will improve that condition. *Elk Roofing Co.* v. *Pinson*, 22 Ark. App. 191, 737 S.W.2d 661 (1987). In a workers' compensation proceeding, the determination of when the healing period has ended is a factual determination that is to be made by the Commission; if that determination is supported by substantial evidence, it must be affirmed on appeal. *Mad Butcher, Inc.* v. *Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982).

In the instant case, the record reveals that immediately following her injury in February of 1985, X-rays disclosed no evidence of significant injury. On March 25, 1985, appellant was released to return to work by Dr. Kelley with a fifteen pound lifting restriction, and appellant did in fact return and continue to work until her termination in May of 1986. After her termination in 1986, she was followed by Dr. Tsang, who reported that the results of a lumbar myelogram and CT Scan were normal. Also, the results of the CT Scan and myelogram ordered in 1988 by Dr. Giles were normal, which Dr. Giles said was inconsistent with appellant's symptoms of leg pains. Dr. Giles did opine that appellant had a pre-existing degenerative disc disease at L-5, S-1, which could have been aggravated by the 1985 injury, and he assessed a five percent anatomical impairment rating. Dr. Giles

said that he felt surgery was unnecessary, and that the only treatment he would recommend would be occasional physical therapy and mild anti-inflammatory drugs or muscle relaxants. There was evidence that appellant missed a number of days from work after her injury, but the Commission concluded that it was difficult to determine whether her absences were attributable to her compensable injury, as appellant had other medical problems for which she had been treated. For instance, appellant admittedly was absent from work for ten weeks in July of 1985 when she had surgery. Based on a review of this record, we cannot say that the Commission's decision that appellant was not entitled to temporary total benefits beyond March 25, 1985, is not supported by substantial evidence.

AFFIRMED in part.

REVERSED and REMANDED in part.

CORBIN, C.J., and MAYFIELD, J., agree.