CITY of FORT SMITH *v.* Robert BROOKS

CA 92-239                                            842 S.W.2d 463

Court of Appeals of Arkansas
Division I
Opinion delivered December 9, 1992
[Rehearing denied January 13, 1993.]

*Dailey, West, Core, Coffman & Canfield*, by: *Eldon F. Coffman* and *Douglas M. Carson*, for appellant.

*Walker Law Firm*, by: *Eddie H. Walker*, for appellee.

Elizabeth W. Danielson, Judge. The City of Fort Smith appeals from a decision of the Workers' Compensation Commission finding that appellee Robert Brooks was entitled to benefits for his psychological condition. Appellant contends on appeal that the Commission's decision is not supported by substantial evidence and that in the alternative, if the claim is compensable, appellee is not entitled to benefits prior to September 20, 1990. We affirm.

Appellee was employed with the Fort Smith Police Department for sixteen years. During this time, he worked in patrol duty, criminal investigation, and internal affairs. The Commission found that he had an excellent police record and that, prior to the injury in question, he had never demonstrated any signs of

psychological illness. The Commission further found that until the May 17, 1990, incident, appellee was healthy and stable; that he had no financial or marital problems; and that he appeared to have the perfect disposition to be a supervising officer. In 1978, appellee was forced to kill man in the line of duty. At that time, psychological counseling was offered but was not mandatory. Appellee declined counseling after the shooting incident. He testified that following the shooting he experienced a range of emotions and reactions, including depression, but felt that he could handle the matter and eventually "try to block it out" of his mind, which he felt he was able to do.

In May of 1988, appellee was promoted to captain, and in November of 1989, he was transferred to the Internal Affairs Division. He as the only employee in that division and, as the captain in charge, was responsible for the investigation of complaints against and allegations of misconduct by police officers; the investigation of minor complaints against police officers; assisting in the hiring process, i.e., conducting interviews, examinations, testing, and background investigations; and the serving of subpoenas. Since appellee left this position in May of 1990, three of these job responsibilities have been removed from the Internal Affairs Division and assigned to other departments, leaving only the job of investigating complaints and allegations of misconduct. Appellee testified that when he first started working for internal affairs, he was successful in having investigations resolved within a 30 day period, but during the period of time he was in that position the volume of complaints doubled and it began taking anywhere from 60 to 90 days to get a determination on a complaint.

Chief Ralph Hampton, Chief Don Taylor, Captain Larry Hammonds, and appellee all described the internal affairs job as being stressful. The internal affairs officer was described as a "headhunter" and the officer being investigated as the "victim." When questioned about the job-related stress in internal affairs, Chief Hampton testified that there was a certain amount of self-imposed isolation since the officer would have to guard against any type of associations that might be interpreted as partiality.

In November of 1989, appellee had to investigate a shooting in the line of duty by a fellow police officer. During the course of

the investigation, appellee was called upon at a press conference to relate his own experience of shooting a suspect in the line of duty. Appellee testified that the investigation and press conference incident brought back memories of the shooting, which he described as "a horrible experience, one that very few police officers have to face in their career."

Appellee continued to function as the internal affairs officer until May 17, 1990. On that date, while making a presentation at a retirement party, he began experiencing trouble breathing, dizziness, shaking, and nervousness. He testified he felt like everything was closing in on him. He returned to his office, hoping the symptoms would go away, but they became worse instead. Appellee left work then and was seen by a psychiatrist the next day. He has been under regular treatment since then. He attempted to return to work for three days in July of 1990 but was unable to continue.

Reports from three different physicians indicated that appellee's psychological condition was work related. Dr. Joe Dorzab diagnosed appellee as having major depression and described his personality as that of a workaholic. Dr. Dorzab concluded that appellee was "suffering from a disabling disorder that is at least in part work related and may be mostly job related." The Commission found that appellee's psychological injury arose out of and occurred during the course of his employment and awarded temporary total disability benefits from June 6, 1990, to a date yet to be determined.

Appellant's first argument is that the Commission's decision is not supported by a preponderance of the evidence because the record does not show that appellee was subjected to greater job stress than other internal affairs officers. We disagree.

In *McClain* v. *Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1990), we stated that when determining the compensability of nontraumatically induced mental illness that is alleged to have resulted from the claimant's work, the claimant must show more than the ordinary day-to-day stress to which all workers are subjected, and that this rule implies that the comparison be made between similarly situated employees. 29 Ark. App. 218 at 220, 224. We also stated that while comparisons to fellow employees may be of some evidentiary value, the

ultimate test in determining compensability is whether the stress constitutes an abnormal working condition for that type of employment. 29 Ark. App. at 224. Whether the stress was more than ordinary and whether the psychological injury was causally connected to it or aggravated by it are questions of fact for the Commission to determine. *Barrett* v. *Arkansas Rehabilitation Servs.*, 10 Ark. App. 102, 661 S.W.2d 439 (1983).

■■ When the Commission's findings of fact are challenged on appeal, we affirm if they are supported by substantial evidence. *Patrick* v. *Arkansas Oak Flooring Co.*, 39 Ark. App. 34, 833 S.W.2d 790 (1992). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Lewis* v. *Camelot Hotel*, 35 Ark. App. 212, 816 S.W.2d 632 (1991). We do not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Willmon* v. *Allen Canning Co.*, 38 Ark. App. 105, 828 S.W.2d 868 (1992).

Appellee's position was described by himself and another witness as that of a "headhunter." Those being investigated were considered "victims." The testimony of the other officers who had at some point served as internal affairs officers established that while they would characterize the job as "stressful," the conditions under which they served were much less strenuous than that encountered by appellee. During appellee's time as internal affairs officer, the number of complaints doubled. Two employees had to be discharged as a result of complaints and the subsequent investigations. Appellee was handling four different categories of duties, three of which have since been reassigned to other departments. In addition to the stress due to the nature of the office and the increased workload, appellee was put in the position of having to recall the shooting death he was involved in, which caused many of the emotions and problems associated with that event to resurface. All of this constitutes substantial evidence to support the finding that appellee was subjected to abnormal working conditions for an internal affairs officer, and that he was under greater stress than others similarly situated.

Appellant also argues that the Commission's decision was not supported by substantial evidence because the record did not

show that appellee's condition was caused by work-related stress as opposed to other stress factors in his life. To the contrary, all the work-related factors just discussed support the Commission's finding of causation. Additionally, the Commission found that prior to the May 1990 psychological incident, appellee was healthy and stable, and had no marital or financial problems. In describing appellee, Chief Hampton said, "I would have to describe Mike generally, in order to give you a true picture of him. I don't think I ever saw Mike Brooks lose his cool. Mike . . . represented a very, very controlled person, a self-controlled person."

■ Considering the absence of any history of psychological problems, appellee's excellent work history as a police officer for sixteen years, the evidence of greater than ordinary work-related stress factors, the clear history of a psychological injury occurring at work, and the medical evidence supporting causation, we hold there was substantial evidence to support the Commission's decision.

■ Appellant also argues in the alternative that if the claim is compensable, appellee is not entitled to benefits prior to September 20, 1990. The Commission notes that there was some confusion as to when appellant received a report of appellee's injury as required by Ark. Code Ann. § 11-19-701(a)(1) (1987), but finds that this question was settled by the testimony of Chief Hampton. When asked when he first learned that appellee was relating his illness to his employment, Chief Hampton said "I believe it was while he was at Harbor View [hospital] . . . but that would have been probably two weeks or so after Mike had taken off." This testimony provides substantial evidence to support the Commission's decision that appellee was entitled to benefits beginning June 6, 1990.

Affirmed.

JENNINGS and ROGERS, JJ., agree.