CDI CONTRACTORS and U.S. Fidelity & Guaranty
Co. *v.* Jimmy McHALE

CA 92-11                                      848 S.W.2d 941

Court of Appeals of Arkansas
En Banc
Opinion delivered February 24, 1993

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for appellant.

*James F. Swindoll*, for appellee.

JAMES R. COOPER, Judge. CDI Contractors appeals from a decision of the Workers' Compensation Commission awarding temporary total disability benefits to Jimmy McHale. On appeal, appellant argues that there is no substantial evidence that the appellee's psychological problems bear a causal relationship to his work-related injury, and that there is no substantial evidence that the appellee's healing period extended beyond October 9, 1990. We affirm.

In determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Deffenbaugh Indus.* v. *Angus*, 39 Ark. App. 24, 832 S.W.2d 869 (1992). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *San Antonio Shoes* v. *Beaty*, 28 Ark. App. 201, 771 S.W.2d 802 (1989). In making our review, we recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight to be given to their testimony. *Johnson* v. *Hux*, 28 Ark. App. 187, 772 S.W.2d 362

(1989). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case *de novo. Tyson Foods, Inc.* v. *Disheroon*, 26 Ark. App. 145, 761 S.W.2d 617 (1988).

The record reveals that the appellee was working as a carpenter's helper on February 28, 1990, when he injured his back. The appellant accepted the claim as compensable and paid medical and disability benefits up through January 28, 1991. The appellee was seen by a number of doctors of varying specialties who offered diagnoses of lumbar strain and ankylosing spondylitis.

On October 9, 1990, the appellee sought treatment from Dr. Austin Grimes, an orthopedic surgeon. When Dr. Grimes first examined him, he noted that the appellee complained of pain, but had good range of motion and no neurological deficits. Dr. Grimes questioned the previous diagnosis of ankylosing spondylitis and recommended further examination by a rheumatologist, Dr. Thomas Kovaleski. During this period, the appellee also underwent a rehabilitation evaluation by Karen Martin, a rehabilitation specialist. In her report, she noted that the appellee related a history of personality and psychological problems and recommended psychological assessment and further medical evaluation. Dr. Kovaleski examined the appellee and determined that he did not suffer from ankylosing spondylitis, but felt that his low back injury could not be effectively treated without psychological care. Dr. Kovaleski referred the appellee to Dr. Frank Slavik, a psychologist, for chronic pain syndrome.

Dr. Slavik evaluated the appellee in November 1990, and administered the Minnesota Multiphasic Personality Inventory (MMPI-II) test. Dr. Slavik determined that the results were indicative of psychological and emotional problems and recommended that the appellee see a psychiatrist for evaluation regarding the appropriateness of psychiatric medication. Another report from Karen Martin dated January 5, 1991, indicated that any vocational rehabilitation plans would be suspended pending resolution of the appellee's emotional and psychological

status.

The appellee also underwent a functional capacity evaluation at Ergoplex, a work hardening center on January 23, and 23, 1991. This evaluation was to determine physical limitation and physical capabilities as related to job tasks. The MMPI-II and The Millon Behavioral Health Inventory (MBHI) were administered as part of the evaluation. Paul Allen Bolt, the occupational therapist who supervised the evaluation, indicated inconsistencies in the findings of functional capacity due to sub-maximal effort suggesting poor participation. Based on these findings and the psychological test results, Mr. Bolt concluded that a work hardening program would not be beneficial to the appellee.

Dr. Winston Wilson, a clinical psychologist, interpreted the test results of the MMPI-II and MBHI administered by Mr. Bolt. Dr. Wilson concluded that test was not valid because the appellee exaggerated the answers. Based on his evaluation of the test results, he concluded that the appellee had an anti-social personality; that he was impulsive, manipulative, and malingering; that he was motivated by secondary gain, and that he would utilize threats to achieve his ends. Dr. Wilson's opinion indicated that the appellee's psychological problems were long-standing and were in no way related to his workers' compensation injury.

The appellee returned to Dr. Grimes in January, February and March 1991, and he was found to have a herniated disc and degenerative disc disease at multiple levels, and continued to experience pain.

By an opinion dated June 7, 1991, the administrative law judge found that the appellee was entitled to medical expenses for continued treatment by Dr. Grimes; that he was entitled to continuing temporary total disability until he reached a maximum medical benefit as determined by Dr. Grimes; that the appellant would have no liability for care and treatment by Dr. Kovaleski beyond the initial evaluation and that the appellant would bear responsibility for active care and treatment rendered by Dr. Slavik up to the date of the ALJ's opinion. This last finding was based upon the ALJ's determination that the appellee's current psychological problems bore a causal relationship to his work-related injury. The full Commission adopted and affirmed the ALJ's findings.

For reversal, the appellant first argues that there is no substantial evidence that the appellee's psychological problems bore a causal relationship to his work-related injury. The appellant asserts, and the record reflects, that the appellee has a lengthy history of drug and alcohol abuse and treatment, instability in employment, physical violence, and emotional difficulties. The appellant therefore contends that the appellee's work-related injury in no way caused his psychological problems or aggravated his pre-existing psychological problems. The appellant relies on Dr. Winston Wilson's opinion in support of this argument.

█ ██ However, the record also contains the evaluation of Dr. Slavik, which was noted by the administrative law judge and adopted by the Commission. Dr. Slavik opined that the test results were valid and that the appellee's profile was suggestive of paranoid schizophrenia. Dr. Slavik stated that this coupled with the patient's history led him to believe that the appellee had a violent history and was likely to have pressed social limits. He noted that the appellee reported that he had participated in a rehabilitation program that, with one exception, had helped him refrain from drug abuse for a period of over twelve months. Dr. Slavik further stated:

> *It seems that this man had made what I would call a partial adjustment, had been able to hold down a job, and had worked productively, without abusing drugs, until his injury. This supported my opinion that his injury disturbed the fragility of his adjustment* and this resulted in inconsistent, sad, angry, depressed, anxious, suspicious behavior with a fragile hold on reality.

> \* \* \*

> ... In my opinion his emotional condition is now part of his *chronic pain syndrome which is related and secondary to the on-the-job injury to his lower back.*

> \* \* \*

> ... As I noted above I am of the opinion that his *current psychological condition emerged as his marginal adjustment was disturbed by his injury.*

\* \* \*

It is important to realize in the case of Mr. McHale that it is, in my opinion, both reasonable and necessary for him to be treated both behaviorally by a psychologist and psychiatrically by a psychiatrist for the chronic pain syndrome and the secondary emotional and psychiatric conditions, which have been triggered.

The Commission has the duty of weighing medical evidence as it does any other evidence, and the resolution of the conflict is a question of fact for the Commission. *Public Employee Claims Div.* v. *Tiner*, 37 Ark. App. 23, 822 S.W.2d 400 (1992); *Mack* v. *Tyson Foods, Inc.*, 28 Ark. App. 229, 771 S.W.2d 794 (1989). We hold that there was substantial evidence to support the Commission's finding that the appellee's current psychological problems bore a causal relationship to his work-related injury.

The appellant also argues that there is no substantial evidence that the appellee's healing period extended beyond October 9, 1990, the date he first saw Dr. Grimes. The appellant emphasizes that at the time of that examination Dr. Grimes reported little objective findings to support the appellee's subjective complaints of pain. However, a report from Dr. Grimes dated March 14, 1991, stated that an MRI had disclosed a herniated disc and degenerative disc disease at multiple levels and indicated that the appellee would not be employable until he had psychiatric counseling and retraining. The determination of when the healing period has ended is a factual determination that is to be made by the Commission; if that determination is supported by substantial evidence it must be affirmed. *Crosby* v. *Micro Plastics, Inc.*, 30 Ark. App. 225, 785 S.W.2d 56 (1990). We find there is substantial evidence to support the Commission's finding.

Affirmed.

JENNINGS, C.J., not participating.

ROGERS, J., dissents.

JUDITH ROGERS, Judge, dissenting. I agree with that portion of the majority opinion that appellee should continue to receive temporary total disability for his physical injury until Dr. Grimes feels that appellee has reached the end of his healing period.

However, I strongly disagree that there is substantial evidence to support the finding that appellee's psychological problems bear a causal relationship to his work-related injury.

While it is true that it is the function of the Commission, and not the appellate courts, to act as the fact finder in workers' compensation cases, *see* Ark. Code Ann. § 11-9-711(b)(3) (1987), it is also true that it is the duty of the appellate court to reverse the Commission's decision when convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *Franklin Collier Farms* v. *Chappel*, 18 Ark. App. 200, 712 S.W.2d 334 (1986). The reviewing court must set aside the Commission's decision when it cannot conscientiously find from a review of the entire record that the evidence supporting the decision is substantial; in this context, substantial evidence has been defined as more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *College Club Dairy* v. *Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988).

The medical and psychiatric history of the appellee is important to an understanding of his present condition.

Appellee testified that he came to Arkansas for the Veteran Administration's drug and alcohol treatment program. His employment history reveals an inability to get along with co-workers and supervisors; long-standing drug and alcohol addiction; psychiatric hospitalizations; and incidents of violence. He has been diagnosed as having a borderline personality disorder. Individuals who have this disorder are noted for feelings of entitlement. In addition, these persons "tend to experience complicated or incomplete recovery from illness [and] . . . may consciously or unconsciously create challenging, vague, un-diagnosable illnesses, such as chronic viral infections or chronic pain." In summary, treatment of individuals with BPD tends to be rather difficult and challenging, as it is often complicated by noncompliance and/or active interference with professional care, poor impulse control and mood instability, and an uncertain response to both psychotherapy and the use of psychotropic

agents.[1]

I agree with the dissent of Commissioner Tatum that the claimant has failed to meet his burden of proof that his pre-existing psychiatric condition was aggravated by his compensable injury.

In affirming, the majority emphasizes the Commission's reliance on the testimony of Dr. Frank Slavik that appellee had partially adjusted simply because he had been able to hold down a job for a two month period. I note this period was of short duration and I do not think that, given appellee's intermittent work history, his long years of substance abuse, and his previous psychiatric history, that reasonable minds could conclude that he had made an adjustment in this short period. Appellee had never held a job for more than three months since February of 1986. Given appellee's long-standing problem, it does not seem reasonable to consider a two-month length of employment as representing an "adjustment period;" therefore, the entire premise on which this argument is predicated appears to be unjustified. Furthermore, the maladaptive behaviors described as resulting from this injury are consistent with his previous mode of functioning and there is no indication that the present behaviors represent a significant deterioration of his psychological condition.

The workers' compensation system was designed in some small measure to compensate injured victims, pay their medical costs and rehabilitate them for future gainful employment. This court has previously reversed commission findings when it is obvious that the law is not being applied to achieve these ends. We should not hesitate to reverse a decision that is not supported by substantial evidence.

---

[1] Borderline Personality Disorder: Office Diagnosis and Management by Randy A. Sansone and Lori A. Sansone, il v44 *American Family Physician*, July 1991, p. 194(4).