Steven GRIMES *v.* NORTH AMERICAN FOUNDRY

CA 92-690                                      856 S.W.2d 309

Court of Appeals of Arkansas
En Banc
Opinion delivered June 16, 1993

*Walker Law Firm*, by: *Eddie H. Walker, Jr.*, for appellant.

*Davis, Cox & Wright*, by: *Paul H. Taylor*, for appellee.

JUDITH ROGERS, Judge. Steven Grimes appeals from an order of the Arkansas Workers' Compensation Commission limiting his award of permanent partial disability benefits to seven percent to the body as a whole. For reversal of this decision, appellant contends that (1) the Commission erred in remanding the case to the administrative law judge for the taking of additional evidence; (2) that the Commission erred in denying benefits in excess of seven percent; and (3) that the Commission erred in its interpretation of Ark. Code Ann. § 11-9-522 (1987). We find no reversible error, and affirm.

Appellant sustained an admittedly compensable injury to his

back on August 22, 1987, while in the employ of appellee, North American Foundry. At the time of his injury, appellant was working a forty-hour week as a machine operator earning $6.15 an hour. His duties required him to stand most of the day, and also involved his pushing eighty-pound sand molds onto a conveyor, and lifting aluminum boards. After the injury, appellant returned to work at his former position on November 23, 1987, and he continued to work for appellee in that capacity until he and a number of other employees were laid off on February 9, 1989. Appellant subsequently went to work full time at D&N Machinery earning $5.50 an hour. He filed the present claim seeking an award of permanent partial disability benefits in connection with the injury to his back.

In an opinion dated July 11, 1990, an administrative law judge determined that appellant was entitled to benefits in an amount equal to seventeen percent to the body as a whole, of which seven percent was attributable to his anatomical impairment and ten percent to a loss in wage earning capacity. Both parties appealed the ALJ's decision to the Commission. In an opinion dated February 5, 1991, the Commission affirmed the ALJ's finding with regard to the seven percent anatomical impairment rating. The Commission, however, vacated the finding with regard to the loss in earning capacity and remanded to the ALJ for the taking of additional evidence as to whether appellant had been laid off for economic reasons. The Commission determined that this was a relevant consideration in light of the provisions in Ark. Code Ann. § 11-9-522 (1987), since appellant had returned to his job earning the same wages and had continued to work there for fifteen months before his termination. After a hearing, the ALJ issued an order in which he found that appellant had been dismissed solely for economic reasons. As before, the ALJ awarded appellant permanent partial disability benefits in an amount equal to seventeen percent to the body as a whole.

Appellee pursued an appeal to the Commission. A majority of the Commission agreed with the ALJ's assessment of appellant's anatomical impairment rating of seven percent, but concluded that appellant had not suffered a loss in wage earning capacity as a result of his compensable injury. It is from this order, in which the Commission awarded appellant permanent

partial disability benefits commensurate with an anatomical impairment rating of seven percent, that appellant brings this appeal.

As his first point, appellant contends that the Commission erred when it initially remanded the case for the presentation of additional evidence as to the reason he had been laid off. Appellant contends that the Commission's action was contrary to our opinion in *Gencorp Polymer Products* v. *Landers*, 36 Ark. App. 190, 820 S.W.2d 475 (1991), where we reversed the Commission's decision which had allowed the claimant a second opportunity to meet her burden of proving temporary total disability. Appellant thus argues that it was error for the Commission to remand the case to permit appellee to offer proof on this issue. He asks that we remand to the Commission for it to decide his entitlement to wage loss benefits based on the record made at the original hearing.

We might be persuaded by appellant's argument had the Commission's consideration of the additional evidence formed the sole basis for its decision to deny wage loss benefits. In its final order, the Commission did consider it significant that appellant had, subsequent to his injury, worked at his previous job for some fifteen months before being laid off for economic reasons, and not on account of his injury. The Commission concluded that this was cogent evidence that appellant's capacity to earn wages had not decreased. The Commission's analysis did not end with this observation, however. The Commission further concluded that, based on the remaining evidence presented, including the consideration of appellant's age, education, work experience, his current employment and the medical evidence offered, appellant had not demonstrated a loss in earning capacity. In light of this finding made by the Commission, it would serve no useful purpose for us to declare error and remand this case for the Commission to render a decision considering only the evidence introduced at the first hearing when it has, in effect, considered this evidence, has made findings of fact, and has concluded that appellant had failed to meet his burden of proof. We, therefore, decline to reverse on this point.

Appellant next argues that the Commission erred in denying benefits in excess of seven percent to the body as a whole. The

record reveals that appellant is thirty-six years old, has a high school education and has 140 hours of class work at Westark Community College in the areas of machine shop, carpentry and automotive mechanics. Prior to his employment with appellee, appellant had served in the military and had several jobs of short duration before going to work at Whirlpool in the maintenance program, a job he held for nine years. Subsequent to his injury, appellant returned to his job with appellee and continued to work for almost a year and a half before being laid off. Three weeks after he lost his job, appellant obtained employment at D&N Machinery where he operates a computerized milling machine.

As stated before, appellant was injured on August 22, 1987. He slipped and fell while climbing onto a conveyor. The medical evidence presented reflects that appellant was initially found to have a bulging disc at the L5-S1 level, according to a CAT scan performed on September 9, 1987. He was released to return to work on November 23, 1987.

On April 5, 1988, appellant was seen by Dr. Paul Raby, an orthopedic surgeon. From his examination, appellant's cervical spine appeared normal and he found no muscle spasm in the lumbar spine. Dr. Raby reported that appellant had full range of motion and that straight leg testing was negative. His diagnosis was that of chronic back syndrome and, because of appellant's complaints of pain, he recommended that appellant undergo an MRI. By appellant's second visit on April 21, 1988, Dr. Raby had the benefit of the results of the MRI, which revealed a herniated disc at the L5-S1 level. Dr. Raby reported that the neurological examination of the lower extremities was normal, that straight leg testing was negative and that "forward bending [was] full." Because appellant was not symptomatic, Dr. Raby recommended conservative treatment and he placed no restrictions on appellant's activities. A follow-up visit was scheduled for a month later. In his office notes from this next appointment on May 18, Dr. Raby noted that EMG and nerve conduction velocity testing performed on March 21, 1988, by Dr. Charles Reul, a neurologist, were both normal. Dr. Raby reported that appellant was completely pain free at that time, and no further appointment was made.

Appellant was again seen, however, by Dr. Raby on Febru-

ary 15, 1989. In his notes from that date, Dr. Raby stated that appellant was complaining of intermittent pain in his lower back, going down to his left lower extremity. He noted that appellant had full flexion and extension of the lumbar spine, that lateral bending was normal, that deep tendon reflexes were present and normal, that there was no muscle weakness and that straight leg raising was negative. Dr. Raby's diagnosis was that the disc herniation remained but "without detectable neurological deficit on clinical examination." He suggested that the MRI be repeated.

At the request of the administrative law judge, appellant was next seen by Dr. Stephen Heim, another orthopedic surgeon, on September 21, 1989. In a letter dated September 25, 1989, Dr. Heim reported:

> I feel Mr. Grimes has a herniated disk on the left side at the L5-S1 vertebral level. He has decreased motion in his lumbar spine but, at this time, has no hard neurological symptoms other than a very mild decrease in the ability to extend the great toe which is not a functional deficit. Additional treatment, if Mr. Grimes feels that problem is too painful to live with, would be excision of the disk, and I would rate him with approximately a 13% total body impairment as he stands at this time.

Appellant returned to Dr. Raby on January 15, 1990, and an MRI was scheduled in several days. On January 23rd, Dr. Raby reported that the MRI revealed disc degeneration, but that the disc herniation was no longer present and that this constituted a marked improvement in appellant's condition. After seeing appellant on January 29, Dr. Raby released appellant from his care. Dr. Raby advised appellant to protect his back due to the likelihood that the herniation might reoccur, but he placed no restrictions on appellant's activities. In his deposition of March 1, 1990, Dr. Raby explained that the disappearance of the disc herniation was uncommon, but that appellant was one of the more fortunate patients who showed this improvement. Also in his deposition, Dr. Raby stated that, based on appellant's current condition, he would assess an impairment rating at seven percent to the body as a whole.

The record also contains the final report of Dr. Charles Reul

dated January 19, 1990. Dr. Reul commented:

> The patient has a history of low back injury with global back pain and left leg pain. He has a completely normal neurological examination, and EMG-NCV of the left lower extremity is normal. MRI scan shows no significant pathology at this point, and I would feel there is no neurological basis for his complaints.

He released appellant to work without restrictions.

On appeal, appellant contends that there is no substantial evidence to support the Commission's assessment of a seven percent anatomical impairment rating. In making this argument, he relies on the opinion of Dr. Heim in which he stated that appellant was impaired to the extent of 13% to the body as a whole. Appellant further contends that there is no substantial evidence to support the Commission's denial of wage loss benefits.

In determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidenced. *CDI Contractors* v. *McHale*, 41 Ark. App. 57, 848 S.W.2d 941 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *City of Fort Smith* v. *Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992). In making our review, we recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *CDI Contractors* v. *McHale, supra.* The Commission has the duty of weighing medical evidence and if the evidence is conflicting, its resolution is a question of fact for the Commission. *Broadway* v. *B.A.S.S.*, 41 Ark. App. 111 848 S.W.2d 445 (1993).

The wage loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *See Perry* v. *Mar-Bax Shirt Co.*, 16 Ark. App. 133, 698 S.W.2d 302 (1985). The Workers' Compensation Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other elements affecting wage loss, such as the claimant's age, education and experience. *Second Injury Fund* v. *Robison*, 22 Ark. App. 157, 737 S.W.2d 162

(1987). The Commission's specialization and experience make it better equipped than we are to analyze and translate evidence into findings of fact. *Tiller v. Sears, Roebuck & Co.*, 27 Ark. App. 159, 767 S.W.2d 544 (1989).

Here, there is testimony in the record given by Dr. Raby setting appellant's anatomical impairment at seven percent. We note that this was the most recent assessment offered, and that Dr. Heim's opinion, upon which appellant relies, was rendered prior to the MRI which revealed that the disc herniation was no longer present. In denying wage loss, the Commission considered that appellant was a relatively young man, that he had a high school education and a fair amount of training in machine shop, carpentry and automotive mechanics. The Commission also observed that his primary treating physician, Dr. Raby, as well as Dr. Charles Reul, had released appellant for work without any specific limitations. Specifically, the Commission noted Dr. Raby's testimony on this subject in which he stated:

> Yes. And based on the fact that the patient has been working on a regular basis and doing work which is probably not light work but a type of regular work with probably some lifting and he's still functioning okay, and I didn't feel that he should have any restrictions.

When we view the evidence in the light most favorable to the Commission's findings, we cannot say that its decision is not supported by substantial evidence.

As his last issue, appellant argues that the Commission erred in its interpretation of Ark. Code Ann. § 11-9-522(b) (1987). This statute provides that:

> (b) In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education work experience, and other matters reasonably expected to affect his future earning capacity. *However, so long as an employee, subsequent to his injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be em-*

*ployed at wages equal to or greater than his average weekly wage at the time of the accident, he shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by a preponderance of the medical testimony and evidence.*

With reference to the emphasized portion of the statute, appellant argues that the Commission erred in applying this section to deny wage loss benefits based on the evidence that after his injury he returned to his former job earning the same wages.[1] We think appellant has misconstrued the Commission's decision. As pointed out in the dissenting Commissioner's opinion, in its final order the Commission did not find that appellant's claim for wage loss benefits was barred under this section. Since the Commission did not preclude recovery on this basis, we find no merit in appellant's argument.

Affirmed.

PITTMAN, ROBBINS, and MAYFIELD, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. This is another case where the decision appealed from has been affirmed by a three to three vote in this court. The basic reason for our division, in my view, results from the failure to the prevailing opinion to apply the doctrine of *stare decisis*. The dictionary meaning of this Latin phrase is "to stand by decided matters." *Webster's New Collegiate Dictionary* (1977). The Arkansas Supreme Court has said "it is necessary as a matter of public policy to uphold prior decisions unless great injury or injustice would result." *Independence Federal Bank* v. *Paine Weber*, 302 Ark. 324, 331-32, 789 S.W.2d 725, 730 (1990). In the present case, the prevailing opinion does not even suggest that application of the doctrine of *stare decisis* would result in injury or injustice.

---

[1] In this issue, appellant mentions that the Commission's conclusion that principles of *res judicata* precluded it from reconsidering the ALJ's finding that appellant was laid off for economic reasons, since appellant had not appealed that decision, is contrary to our holding in *White* v. *Air Systems, Inc.*, 33 Ark. App. 56, 800 S.W.2d 726 (1990). From our reading of appellant's argument, he does not seek reversal on this basis, and we note that reversal would not be in order for the reason we discussed in the first issue.

As the prevailing opinion sets out, on July 11, 1990, an administrative law judge issued an opinion finding that the appellant had sustained a physical impairment of 7 percent to the body, plus a 10 percent wage loss disability, for a 17 percent permanent partial disability. Both parties appealed to the full Commission which affirmed the 7 percent impairment rating but vacated the 10 percent wage loss rating and remanded the case to the law judge for the purpose of determining whether the claimant was laid off by his employer because of the claimant's compensable injury or for economic reasons. The Commission, with one member dissenting, referred to Ark. Code Ann. § 11-9-522(b) (1987) and said:

> We find this section of the law controlling since the claimant did not return to work for the respondent at the same or greater wages he was earning at the time of his injury. In fact, claimant returned to work for the respondent for some 15 months. So far as this record indicates, but for the general layoff the claimant would still be working for the respondent making the same or greater wages. However, claimant contends that he was laid off as the result of his compensable injury.

> Claimant testified that employees with less seniority than him were not laid off; if that is so, we could infer that claimant was laid off because of his injury. Respondent made no attempt to rebut this inference, but we find that this issue was not contemplated by the parties and in order to afford all the parties an opportunity to fully develop this issue we hereby set aside and vacate the Administrative Law Judge's decision finding that the claimant suffered a loss in wage earning capacity in an amount equal to 10% to the body as a whole and remand this case to the Administrative Law Judge for the purpose of determining whether the claimant was laid off as a result of his injury.

The appellant's first point, relied upon in his appeal to this court, contends the Commission erred in remanding the case to the law judge. I think the appellant is correct. Ark. Code Ann. § 11-9-705(c)(1) (1987) provides, in part, as follows:

> Each party shall present all evidence at the initial hearing. Further hearings for the purpose of introducing additional

evidence will be granted only at the discretion of the hearing officer or the commission.

In *Gencorp Polymer Products* v. *Landers*, 36 Ark. App. 190, 820 S.W.2d 475 (1991), the administrative law judge heard the evidence presented and found the claimant to be temporarily totally disabled "beginning June 10, 1989, and continuing to a date yet to be determined." He also found the record incomplete to determine the appropriate periods of temporary total disability benefits between February and June 1989, "and reserved this issue for future determination." 36 Ark. App. at 192, 820 S.W.2d at 476. The Commission affirmed the law judge but on appeal to this court we reversed for the following reason:

> The Commission has allowed the appellee a "second bite at the apple" by giving her another opportunity to present evidence substantial enough to carry her burden. Though we do not interfere with actions of the Commission unless we find it acted without or in excess of its authority, *Allen Canning Company* v. *McReynolds*, 5 Ark. App. 78, 632 S.W.2d 450 (1982), disregarding its duty to find the facts in order to give the appellee the benefit of the doubt is not within the Commission's authority.

36 Ark. App. at 195, 820 S.W.2d at 478.

I simply cannot see any meaningful distinction between the *Gencorp* case and the present case insofar as the holding quoted above is concerned. In the present case the Commission remanded, on its own motion, to the law judge to allow an issue to be fully developed which had not been developed at the hearing before the law judge. In *Gencorp* the law judge decided, on his own motion, to reserve an issue for future determination because the record made at the hearing was not complete enough to decide the issue reserved for future determination, and the Commission affirmed the law judge's action. In short, the Commission, in both cases, gave one of the parties "a second bite at the apple." But we affirm the Commission in this case and we reversed the Commission in *Gencorp*.

I joined the dissenting opinion in the *Gencorp* case and am still of the opinion that the better rule would have been to uphold the law judge's action in that case on the basis that he did not

abuse the discretion granted him under Ark. Code Ann. § 11-9-705(c)(1) (1987). However, the majority of this court reversed. While I did not agree with that decision, it became a precedent we should follow "unless great injury or injustice would result." Much has been written about this point. One in-depth examination of the general practice of adherence to precedent suggests that it rests upon five values: (1) stability, (2) protection of reliance, (3) efficiency in the administration of justice, (4) equality, and (5) the image of justice. Currier, *Time and Change In Judge-Made Law: Prospective Overruling*, 51 Va. L. Rev. 201 at 235-38 (1965). Of particular importance to the appellant in this case are the values of equality and the image of justice. The article states that "equality" comes from "equal treatment of persons similarly situated" and that "adherence to precedent generally tends not only to assure equality in the administration of justice, but also to project to the public the impression that courts do administer justice equally." Both of these values are denigrated in the present case where we affirm the Commission's action in allowing the employer "a second bite of the apple" and refuse to follow a prior case where, under similar circumstances, we would not allow an injured employee a "second bite at the apple." I also think the value of "efficiency in the administration of justice" should cause this court to give careful attention to the observation of Benjamin N. Cardozo, made while a judge on the New York Court of Appeals:

> We have had ten judges, of whom only seven sit at a time. It happens again and again, where the question is a close one, that a case which one week is decided one way might be decided another way the next if it were then heard for the first time. The situation would, however, be intolerable if the weekly changes in the composition of the court were accompanied by changes in its rulings. In such circumstances there is nothing to do except to stand by the errors of our brethren of the week before, whether we relish them or not.

B. Cardozo, *The Nature of The Judicial Process* 150 (1921).

The prevailing opinion, however, seeks to excuse its refusal to follow our decision in *Gencorp* by suggesting that the Commission's consideration of the "additional evidence" taken on re-

mand was not the "sole basis" for its decision to deny wage loss benefits. With all due respect, this does not mean that the case should have been remanded. In its order for remand the Commission said it could not determine whether the appellant was laid off because of his injury or for economic reasons and that "the case is hereby remanded to the Administrative Law Judge for the purpose of determining whether the claimant was laid off as a result of his compensable injury or whether he was laid off for economic reasons." Not only that — but after the law judge heard the additional evidence, he made the same findings he made the last time he heard the matter, and the Commission in its second opinion stated:

> It appears that the significance of why we remanded this case may have been lost. The issue is whether the claimant has met his burden of proving by a preponderance of the evidence that he has suffered a loss in wage earning capacity. The question of whether claimant is laid off for economic reasons or as a result of his compensable injury is extremely relevant in determining whether the claimant has met his burden of proof.

Thus, it is clear that the Commission made the decision appealed to this court based, at least in part, on the evidence presented to the law judge after remand. I think the Commission erred, in light of the *Gencorp* decision, in remanding this case to the law judge and thereby allowing the appellee "a second bite at the apple." Furthermore, I think the conflict between the *Gencorp* decision and the decision in the present case will cause confusion to attorneys who practice workers' compensation law. Following our precedent in *Gencorp* would contribute to stability in this area of the law. This is one of the values of the application of the doctrine of *stare decisis*. Refusing to follow *Gencorp*, without overruling it, promotes instability.

I would affirm the Commission's decision to the extent that it affirmed the law judge's finding that appellant sustained a physical impairment of 7 percent to the body, but I would reverse the Commission's finding that appellant has not sustained any loss in wage earning capacity and would remand that issue to the Commission for a determination to be based solely upon the record before the Commission prior to its remand to the adminis-

trative law judge on February 5, 1991. This does not mean that I agree with the Commission's interpretation of Ark. Code Ann. § 11-9-522 (1987), but that issue would simply not be involved in the disposition I would make of this appeal.

PITTMAN and ROBBINS, JJ., join in this dissent.