Caron Sue WHALEY *v.* HARDEE'S

CA 94-1026                                        912 S.W.2d 14

Court of Appeals of Arkansas
En Banc
Opinion delivered December 20, 1995

*Tolley & Brooks, P.A.*, by: *Jay N. Tolley*, for appellant.

*Bassett Law Firm*, by: *Curtis L. Nebben*, for appellee.

JAMES R. COOPER, Judge. The appellant in this workers' compensation case was employed by the appellee as a biscuit maker from September 1989 until November 1992. She began to experience pain in her right elbow and sought treatment in March 1992. She filed a claim for workers' compensation benefits and, after a hearing before the administrative law judge, was awarded permanent partial disability benefits based upon a 5% permanent physical impairment rating. On *de novo* review, the Commission found that the appellant failed to prove by a preponderance of the evidence that she is entitled to compensation for a permanent physical impairment. From that decision, comes this appeal.

For reversal, the appellant contends that the Commission erred in finding that she failed to prove she incurred a 5% permanent physical impairment. We affirm.

■■ In determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Grimes* v. *North American Foundry*, 42 Ark. App. 137, 856 S.W.2d 309 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *City of Fort Smith* v. *Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case *de novo*. *Tyson Foods, Inc.* v. *Disheroon*, 26 Ark.

App. 145, 761 S.W.2d 617 (1988). In making our review, we recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Grimes* v. *North American Foundry, supra.* The Commission has the duty of weighing medical evidence and, if the evidence is conflicting, its resolution is a question of fact for the Commission. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *McClain* v. *Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1989). Where, as here, the Commission has denied a claim because of a failure to show entitlement by a preponderance of the evidence, the substantial evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Williams* v. *Arkansas Oak Flooring, Co.*, 267 Ark. 810, 590 S.W.2d 328 (Ark. App. 1979).

Two physicians testified on the issue of permanent impairment. Dr. Oates opined that the inflammation was not permanent.[1] The appellant's case therefore rested entirely upon the opinion of Dr. Martinson, who believed the appellant had a 5% impairment. In its opinion, the Commission discussed the basis for its rejection of Dr. Martinson's impairment rating:

> Dr. Martinson opined that the claimant sustained a 5% permanent impairment to her upper extremity. However, in reaching this conclusion, Dr. Martinson made the following comments:
>
>> The *AMA Guidelines* do not fit this clinical situation well. At this point she has no *objective* [emphasis in original] physical abnormalities in her right upper extremity with the exception of the tenderness. The *Guidelines* do permit some latitude in those cases where the severity of the clinical findings does not correspond to the true extent of the physical problem. On that basis, I believe it would be appropriate

---

[1]There is no issue involved in this case as to whether the appellant suffered from inflammation in her upper right extremity — only what that inflammation meant as to permanent disability is at issue.

to assign her a five percent impairment rating for her dominant right upper extremity because of her underlying soft tissue abnormality and the likelihood of recurrence when put to use.

Consequently, Dr. Martinson's opinion is based on her perception of the "true extent of the physical problem," which she developed after examining the claimant on one occasion. With regard to the nature of this problem, Dr. Martinson makes the following comments:

> The customary course of this condition is one of exacerbation and remission depending upon the amount and type of use demanded of the muscles of the arm. The underlying pathology is believed to be one of microscopic tears within the substance of the muscle origin. These heal with scar which, like all scar, responds poorly to additional repetitive stretching producing chronic inflammatory signs and symptoms. . . .

Consequently, Dr. Martinson's opinion is based on her assumption that scar tissue is in fact present which is causing the inflammation. However, as discussed, the findings of tenderness and increased pain with resistive extension merely establish the presence of inflammation; these findings do not indicate the presence of scar tissue or any other permanent impairment, a fact which Dr. Martinson concedes when she recognizes that there are no objective physical abnormalities in her right upper extremity with the exception of tenderness. . . . Consequently, we find that Dr. Martinson's opinion is based on speculation and conjecture and that her opinion regarding permanent impairment is entitled to little weight.

■ The Commission's rejection of Dr. Martinson's opinion was clearly based on its assessment of the weight to be given that evidence. We have often said that the credibility of witnesses and the weight to be given their testimony are matters solely within the province of the Commission. *See e.g., Maxwell* v. *Carl Bierbaum, Inc.*, 48 Ark. App. 159, 893 S.W.2d 346 (1995); *Bartlett* v. *Mead Containerboard*, 47 Ark. App. 181, 888 S.W.2d 314 (1994). Furthermore, we have said that the weighing of medical

evidence and the resolution of conflicts therein is a question of fact for the Commission, *Bartlett, supra*, and that when the Commission chooses to accept the testimony of one physician over another in such cases we are powerless to reverse the decision. *Henson* v. *Club Products*, 22 Ark. App. 136, 736 S.W.2d 290 (1987). In the case at bar, the medical experts disagreed, and the Commission rejected one physician's opinion on the basis of the limited patient contact and the absence of objective physical abnormalities to confirm that physician's assessment. While we may not have reached this conclusion were the matter before us for *de novo* review, we cannot say that reasonable minds could not have arrived at that conclusion or that the Commission's opinion fails to display a substantial basis for denial of relief. Consequently, we hold that the Commission's decision is supported by substantial evidence, and we affirm.

Affirmed.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. In this appeal from a decision of the Worker's Compensation Commission appellant challenges only the denial of benefits for a five percent permanent partial disability rating. The administrative law judge had awarded the appellant temporary total disability through June 10, 1993; permanent disability equal to 5 percent to the right upper extremity; and held that she was entitled to a vocational rehabilitation evaluation and possible training program. The Commission affirmed the award of temporary total disability, reversed the award of permanent partial disability, and vacated the rehabilitation evaluation because it had not been raised by either party below. Appellant has appealed only the issue of permanent partial disability.

The appellant, Caron Sue Whaley, age 48, had been employed by Hardee's for approximately three years making biscuits. She mixed the ingredients with her fingers and manually kneaded the dough. She then rolled the dough out with a three foot rolling pin. She made between 13 and 20 batches of biscuits a day, depending on demand.

In early 1992 appellant began to experience pain in her right elbow. Her family physician, Dr. Randall Oates, diagnosed

"overuse" syndrome and relieved her from work. When she was not making biscuits her condition improved. When she would return to work, she would again experience pain in her right elbow. And when appellant began to have pain in her left arm, Dr. Oates referred her to Dr. Thomas R. Dykman, a rheumatologist.

Dr. Dykman diagnosed appellant as having epicondylitis (also called tennis elbow) and mild fibrositis. He returned her to the care of Dr. Oates and recommended continuing conservative treatment. In late November 1992 Dr. Oates again removed appellant from work and recommended vocational rehabilitation for appellant. In February 1993 Hardee's informed appellant that it had no work within her physical restrictions. At the time of the hearing, June 29, 1993, appellant had not worked since November 1992.

Dr. James F. Moore, an orthopaedist, in a report dated March 25, 1993, diagnosed appellant's condition as right tennis elbow and injected her with DepoMedrol.

Dr. Alice M. Martinson, an orthopaedist, examined appellant at the request of the employer on June 10, 1993. She also diagnosed right lateral epicondylitis (tennis elbow). However, by the time Dr. Martinson examined appellant, appellant had not worked since the prior November and her condition had greatly improved. Dr. Martinson reported that appellant told her she had "only a mild non-disturbing soreness in the lateral side of her right elbow. It is more an awareness of that part of her anatomy than it is a pain." However, the doctor gave her a 5 percent permanent physical impairment rating to her dominant right upper extremity.

In reversing the administrative law judge's award of 5 percent permanent partial disability the Commission stated that Dr. Martinson's impairment rating was based on her *assumption* that scar tissue had formed in appellant's elbow. What Dr. Martinson actually said was:

> The customary course of this condition is one of exacerbation and remission. . . . The underlying pathology is believed to be one of microscopic tears within the substance of the muscle origin. These heal with scar which, like all scar, responds poorly to additional repetitive stretching producing chronic inflammatory signs and symptoms.

After quoting this statement and emphasizing that Dr. Martinson found appellant to have "no *objective* physical abnormalities in her right upper extremity with the exception of the tenderness" (Emphasis in Dr. Martinson's report), the Commission held that the findings of increased pain and tenderness around the elbow only established the presence of inflammation, not scar tissue, and were not adequate to support an award of permanent disability.

The Commission also said:

> In the present claim, the physical examination of each of the physicians who examined the claimant revealed prominent tenderness in the area of the lateral epicondyle of the humerus, and the examinations of Dr. Dykman, Dr. Moore, and Dr. Martinson revealed increased pain with resisted extension maneuvers of the elbow, wrist or fingers. . . . [W]e find that the findings of tenderness over the lateral epicondyle and the increased pain with resisted extension maneuvers satisfies the statutory requirements of Ark. Code Ann. § 11-9-704(c)(1). [objective and measurable physical findings] However, we note that both of these procedures are subject to manipulation by the patient, and there is no evidence that any controls were utilized to minimize the possibility of contrived responses. Consequently, although there is no suggestion that the claimant contrived her responses, the reliability and dependability of the findings are diminished, and the weight given to the findings must be adjusted accordingly.

Appellant notes that the Commission then apparently gave "no weight" to the rating of permanent impairment by Dr. Martinson and characterizes this as a "totally arbitrary standard set by the Commission" and that any claimant "would find it impossible to win any case under this standard of review."

I am in complete agreement with the appellant. The Commission in its opinion cited our cases of *Keller* v. *L.A. Darling Fixtures*, 40 Ark. App. 94, 845 S.W.2d 15 (1992); *Reeder* v. *Rheem Manufacturing Co.*, 38 Ark. App. 248, 832 S.W.2d 505 (1992); and *Taco Bell* v. *Finley*, 38 Ark. App. 11, 826 S.W.2d 313 (1992), and recognized that under these cases there is medical evidence here to support the requirement of Ark. Code Ann.

§ 11-9-704(c)(1) that the existence or extent of physical impairment shall be supported by "objective and measurable physical or mental findings." However, the Commission, although finding "there is no suggestion that the claimant contrived her responses," found that "the reliability and dependability of the findings are diminished" because the procedures used by the doctor to make her determination "are subject to manipulation."

In other words, without making a finding of fact on the point, the Commission rejects the evidence because *it might not be* true. I think this is wrong.

The Commission is also wrong in holding that a finding of inflammation — which occurs every time the appellant returns to work — cannot support an award of permanent wage loss disability. *See Johnson* v. *General Dynamics*, 46 Ark. App. 188, 194, 878 S.W.2d 411, 414 (1994); and *Bragg* v. *Evans-St. Clair, Inc.*, 15 Ark. App. 53, 688 S.W.2d 956 (1985).

I would reverse and remand this case for the Commission to examine the evidence and make findings of fact and conclusions of law in keeping with this dissenting opinion.