SOUTHERN HOSPITALITIES d/b/a Quality Inn, et al. *v.*
Lorie BRITAIN

CA 95-710                                             925 S.W.2d 810

Court of Appeals of Arkansas
En Banc
Opinion delivered July 3, 1996

*Frye & Boyce, P.A.*, by: *Mary A. Jones*, for appellants.

*Lane, Muse, Arman & Pullen*, by: *Donald C. Pullen*, for appellee.

JOHN B. ROBBINS, Judge. Lorie Britain brought a workers' compensation claim against Southern Hospitalities, alleging that she sustained a work-related back injury on July 3, 1993. The Commission found that Ms. Britain failed to prove a compensable injury and thus denied her claim for temporary total disability benefits. However, the Commission also held that Southern Hospitalities was responsible for medical treatment provided by Dr. Bruce Smith. Southern Hospitalities now appeals, arguing that the Commission erred in holding it liable for any medical expenses. On cross-appeal, Ms. Britain contends that the Commission erred in concluding that she failed to prove a compensable injury. We affirm on appeal and on cross-appeal. Specifically, we hold that Ms. Britain cannot prevail on cross-appeal because substantial evidence supports the Commission's finding that she failed to establish a compensable injury under the new requirements set forth by Act 796 of 1993. Despite the fact that Ms. Britain cannot sustain her claim for a compensable injury, we agree with the Commission's ruling that Southern Hospitality is responsible for those medical expenses which were incurred by Ms. Britain at her employer's direction.

When reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if supported by substantial evidence.

*Welch's Laundry & Cleaners* v. *Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *City of Fort Smith* v. *Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992). A decision by the Workers' Compensation Commission should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Silvicraft, Inc.* v. *Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983).

The facts of this case are as follows. On July 3, 1993, Ms. Britain was working in the laundry room for Southern Hospitalities pulling towels from a washer when she felt a pain in her lower back and right leg. Ms. Britain reported her injury to a co-worker, and later informed management about the injury. She continued working that day, but took some pain medication for relief and did not do any more lifting. After work, she was examined by a doctor at a local hospital and was told that she appeared to have a lumbar strain. The doctor prescribed muscle relaxers and pain pills. Ms. Britain returned to the hospital two or three days later when her pain persisted, and was referred to Dr. James Arthur, a neurosurgeon. However, a representative from the employer's compensation insurer informed her that she was not authorized to be treated by Dr. Arthur, and directed her to consult Dr. Bruce Smith, an orthopedic surgeon.

Ms. Britain complied with the direction from the compensation insurer to consult Dr. Smith, and he examined her on July 22, 1993. Dr. Smith diagnosed a mild back sprain, prescribed more pain medication and muscle relaxers, and directed her to return to work and contact him if she had any problems. Ms. Britain attempted to return to work but, after working for only a few hours, began experiencing additional pain in her lower back and legs. She telephoned Dr. Smith's office, reported her symptoms, and was told to remain off work until an MRI study of her lumbar spine could be performed. That study was performed on August 11, 1993, and indicated evidence of a prior surgery. However, no recurrent disc herniation was detected, and no nerve-root impingement was found. Based upon that study, Dr. Smith released Ms. Britain to return to work effective August 12, 1993, without restrictions, and released her from care. On September 8, 1993, Dr. Smith again released Ms. Britain to work, but this time he directed that she restrict her lifting to no more than thirty pounds. Ms. Britain

returned to work following the August 11, 1993, study and examination and continued to work through September 16, 1993, when she was fired.

It is undisputed that Southern Hospitalities accepted Ms. Britain's July 3, 1993, back sprain as compensable, and that it paid for the medical treatment that Ms. Britain received from the hospital and paid temporary total disability benefits through July 21, 1993. The parties stipulated that an incident occurred on July 3, 1993, which Ms. Britain immediately reported as a work-related injury. The Commission found that the appellants initially accepted responsibility for the claim. Furthermore, it is undisputed that Southern Hospitalities and its insurance carrier refused to authorize medical treatment by Dr. Arthur, but instead directed Ms. Britain to obtain treatment from Dr. Smith. Nonetheless, Southern Hospitalities denied liability for any of Ms. Britain's medical care, including the cost of Dr. Smith's services and the MRI study that she received under his care, as well as her claim for temporary total disability benefits associated with the time that she was off work pursuant to Dr. Smith's direction. Southern Hospitalities denied Ms. Britain's claim by contending that her injury was not supported by objective findings so that it was not a "compensable injury" within the meaning of various provisions of Ark. Code Ann. § 11-9-102 (Repl. 1996), as amended by Section 2 of Act 796 of 1993.

As the Commission noted in its opinion, the only positive medical finding resulting from any of the examinations of Ms. Britain was that of lumbar tenderness. Following an examination which revealed a good range of motion and a negative straight leg-raising maneuver, Dr. Smith opined that Ms. Britain sustained a "mild sprain." An MRI was also performed, but the results were negative. Under the new act, a compensable injury must be established by medical evidence supported by "objective findings," which are findings "which cannot come under the voluntary control of the patient." Ark. Code Ann. § 11-9-102(5)(D) (Repl. 1996); Ark. Code Ann. § 11-9-102(16)(A)(i) (Repl. 1996). The burden of proof of a compensable injury is on the employee. Ark. Code Ann. § 11-9-102(5)(E) (Repl. 1996). In the instant case, the Commission correctly concluded that the medical evidence was not supported by "objective findings," and that Ms. Britain thus failed to establish entitlement to compensation for a compensable injury.

After deciding to deny Ms. Britain's claim for compensability,

the Commission nevertheless awarded benefits against the appellants for medical expenses incurred under the treatment of Dr. Smith. In doing so, the Commission explained:

> [W]e note that the respondents are seeking to avoid liability for medical treatment which was provided to the claimant at their direction during the time that they accepted the compensability of the claim. In this regard, the respondents initially accepted the compensability of this claim, and they accepted responsibility for the medical services provided to the claimant by and at the direction of Dr. Smith. Consequently, we find that they cannot now deny liability for those services, including liability for the expenses for the MRI.

▇▇▇▇ An employer is generally only responsible for medical expenses when an employee is determined to have suffered a compensable injury. *See* Ark. Code Ann. § 11-9-102(5)(F)(i) (Repl. 1996). However, in this case the employer directed Ms. Britain to see Dr. Smith and led Ms. Britain to reasonably believe that such treatment would be covered by workers' compensation. Although the Commission did not specifically state that it was invoking the equitable doctrine of estoppel, it is implicit in its opinion that it did so. In *Snow v. Alcoa*, 15 Ark. App. 205, 691 S.W.2d 194 (1985), we set out the elements of estoppel as follows:

> 1) The party to be estopped must know the facts; 2) he or she must intend that his or her conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe the other party so intended; 3) the party asserting the estoppel must be ignorant of the true facts; and 4) the party asserting the estoppel must rely on the other party's conduct to his or her injury.

The facts of this case constitute substantial evidence in support of the Commission's decision. The employer is estopped from denying responsibility for the cost of treatment rendered by Dr. Smith notwithstanding the fact that Ms. Britain's back injury was ultimately deemed to be noncompensable. Southern Hospitalities directed Ms. Britain to visit a specific physician and represented that it was accepting her injury as compensable, thus prompting Britain to visit Dr. Smith and incur medical expenses. The Commission did not err in concluding that these expenses should be borne by the

appellants.

Affirmed on direct appeal.

ROGERS, J., agrees.

MAYFIELD and GRIFFEN, JJ., concur.

JENNINGS, C.J., and COOPER, J., dissent.

Affirmed on cross-appeal.

ROGERS, J., agrees.

JENNINGS, C.J., and COOPER J., concur.

MAYFIELD and GRIFFEN, JJ., dissent.

JOHN E. JENNINGS, Chief Judge, concurring in part and dissenting in part. I concur in the court's affirmance on cross-appeal. I agree with Judge Robbins that the Commission's finding that Ms. Britain's injury is not "compensable" under the new act is supported by substantial evidence.

I cannot agree that the case can be affirmed on direct appeal, however. There are several problems with affirming on an estoppel theory. First, the Commission did not make a specific finding that the employer was estopped. Estoppel is ordinarily a question of fact. *See Dickson* v. *Delhi Seed Co.*, 26 Ark. App. 83, 760 S.W.2d 382 (1988). Second, Ark. Code Ann. § 11-9-508(a) requires the employer to provide medical services. I do not understand how the employer can be estopped by doing something the statute requires.

Finally, Ark. Code Ann. § 11-9-510 expressly provides that there is no liability here. "The employer shall not be liable for any of the payments provided for in §§ 11-9-508 — 11-9-516 in the case of a contest of liability where the Commission shall decide that the injury does not come within the provisions of this chapter." My conclusion is that, under the new act, we have no choice but to reverse on direct appeal, and for that reason I respectfully dissent. I concur in the court's affirmance on cross-appeal.

COOPER, J., joins in this concurrence and dissent.

WENDELL L. GRIFFEN, Judge, concurring in part and dissenting in part. Is a low-back strain that a worker suffers while performing her job and which her employer acknowledges as having occurred within the scope of and arising out of her employment a "compen-

sable injury" within the meaning of the changes to the Arkansas Workers' Compensation Law enacted as Act 796 of 1993? This is the question presented by this case of first impression under the 1993 changes. Although one might first think that this question is easily answered given the history of workers' compensation in Arkansas, this case shows that the definition of "compensable injury" under the new act may pose somewhat novel and nagging difficulties to employers, injured workers, the Workers' Compensation Commission, and this court.

Southern Hospitalities d/b/a Quality Inn [hereinafter "Southern Hospitalities"] and Union Standard Insurance Company (its workers' compensation insurer) have appealed the March 18, 1995, decision by the Workers' Compensation Commission holding that Lorie Britain was entitled to medical benefits under the Workers' Compensation Law arising from a back injury that Britain suffered on July 3, 1993, even though the Commission found her injury non-compensable. Britain has cross-appealed from the Commission's decision denying her claim for temporary total disability benefits associated with that injury based upon its determination of non-compensability. We conclude that the Commission's decision finding Southern Hospitalities liable for the cost of the medical services and treatment that Britain received is supported by substantial evidence. Therefore, we would affirm on the appeal. However, that part of the Commission's decision finding that Britain failed to prove that she sustained a compensable injury is not supported by substantial evidence. Thus, we would reverse the decision denying Britain's claim for temporary total disability benefits, and we would remand the case to the Commission so that an order awarding those benefits can be entered.

The facts are essentially undisputed. On July 3, 1993, Britain was working in the laundry room for Southern Hospitalities pulling towels from a washer when she felt a sharp pain in her lower back and down her right leg. She reported her injury to a co-worker, and she informed management about the injury. She continued working that day, but took some pain medication for relief and did not do any more lifting that day. After work she went to a local hospital, was examined by a doctor there and told that she appeared to have a lumbar strain, and was prescribed muscle relaxers and pain pills. Britain returned to the hospital two or three days later when her pain persisted, and was referred to a local neurosurgeon, Dr.

James Arthur. However, a representative from the employer's compensation insurer informed her that she was not authorized to be treated by Dr. Arthur, and directed her to consult Dr. Bruce Smith, an orthopedic surgeon, instead. Britain had formerly been a patient under Dr. Smith's care for another back injury that occurred when she worked for a different employer.

Britain complied with the direction from the compensation insurer to consult Dr. Smith, who examined her on July 22, 1993. He diagnosed a mild back sprain, prescribed more pain medication and muscle relaxers, and directed her to return to work and contact him if she had any problems. Britain attempted to return to work but began experiencing additional pain in her lower back and legs after working for less than three hours. She telephoned Dr. Smith's office, reported her symptoms, and was told to remain off work until a magnetic resonance imaging (MRI) study of her lumbar spine could be performed. That study, performed on August 11, 1993, produced findings of desiccation of Britain's intervertebral disc at L5-S1, slight bulging of the disc on the right at that level, and post-surgical scarring on the right at that level. No recurrent disc herniation was detected, and no nerve-root impingement was found in that study. Based upon that study, Dr. Smith released Britain to return to work effective August 12, 1993, without restrictions, and released her from care. On September 8, 1993, Dr. Smith again released Britain to work, but this time he directed that she restrict her lifting to no more than thirty pounds. Britain returned to work following the August 11, 1993, study and examination and worked through September 16, 1993, when she was fired. She brought a claim for workers' compensation benefits related to the medical treatment that she received, including the cost of the MRI study, as well as for temporary total disability benefits related to the time that she was off work as directed by Dr. Smith from July 22 to August 12, 1993. She subsequently obtained work from a different employer.

It is undisputed that Southern Hospitalities accepted Britain's July 3, 1993, back sprain as compensable, and that it paid, through its insurance carrier, for the medical treatment that Britain received from the hospital and paid temporary total disability benefits through July 21, 1993. The parties stipulated that an incident occurred on July 3, 1993, which Britain immediately reported as a work-related injury, and that the incident arose out of and occurred

in the course of her employment. The Commission found that the appellants initially accepted responsibility for the claim. Furthermore, it is undisputed that Southern Hospitalities and its insurance carrier refused to authorize medical treatment by Dr. Arthur, but instead directed Britain to obtain treatment from Dr. Smith. Nevertheless, Southern Hospitalities denied liability under the Workers' Compensation Law concerning the cost of *all of* Britain's medical care, including the cost of Dr. Smith's services and the MRI study that she received under his care, as well as her claim for temporary total disability benefits associated with the time that she was off work pursuant to Dr. Smith's direction. Southern Hospitalities denied Britain's claim by contending that her injury was not supported by objective findings so that it was not a "compensable injury" within the meaning of various provisions of Ark. Code Ann. § 11-9-102 (Repl. 1996) as amended by Section 2 of Act 796 of 1993.

An administrative law judge found that Britain did sustain a "compensable injury," and awarded her temporary total disability benefits for the period in question plus her medical expenses and a controverted attorney's fee. Southern Hospitalities appealed that determination to the Commission, which affirmed the award of medical benefits because Southern Hospitalities initially accepted the claim as compensable and accepted responsibility for the medical services provided to Britain by Dr. Smith at its direction. However, the Commission reversed the award of temporary total disability benefits from July 22 to August 12, 1993, and the finding that Britain sustained a compensable injury, holding that she failed to establish a compensable injury with medical evidence supported by objective findings as defined by Ark. Code Ann. § 11-9-102(16)(Repl. 1996). Southern Hospitalities has appealed from the decision holding it liable for all medical benefits, including the MRI expense and the cost of Dr. Smith's care. Britain has cross-appealed from the decision holding that she failed to prove that she sustained a compensable injury.

Our task on appellate review of decisions by the Workers' Compensation Commission is to review the evidence and all reasonable inferences from it in the light most favorable to the Commission's findings, and we must uphold the Commission's findings if there is any substantial evidence to support them, even if the preponderance of the evidence would indicate a different result. *Tahu-*

*tini* v. *Tastybird Foods*, 18 Ark. App. 82, 711 S.W.2d 173 (1986). In order to reverse a decision of the Commission, we must be convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *Franklin Collier Farms* v. *Chapple*, 18 Ark. App. 200, 712 S.W.2d 334 (1986). We are required to give findings of fact by the Commission the same force and effect as a jury's verdict when they are supported by substantial evidence. *General Indus.* v. *Gipson*, 22 Ark. App. 219, 738 S.W.2d 104 (1987).

Thus, as to the appeal, our concern is whether the Commission's decision holding Southern Hospitalities liable for Britain's medical expenses upon a finding it accepted the compensability for her claim during the time that the services were provided is supported by substantial evidence. As to the cross-appeal, we review to determine whether the Commission's finding that Britain failed to prove that she suffered a compensable injury as that term is defined by the Workers' Compensation Law, as amended by Act 796 of 1993, is supported by substantial evidence.

Under prior law, Arkansas defined an injury for purposes of workers' compensation benefits to mean an accidental injury arising out of and in the course of employment. Ark. Code Ann. § 11-9-102(4) (1987). However, the Arkansas General Assembly rewrote the definition of injury when it enacted Act 796 in 1993, and specified the meaning of "compensable injury," at Ark. Code Ann. § 11-9-102(5)(A) (Repl. 1996). For our purposes in this appeal, the operative statutory definition is found at § 11-9-102(5)(A)(i), which reads, in pertinent part, as follows:

> "Compensable injury" means:
>
> (i) An accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence.

That definition must also be understood in light of § 11-9-102(5)(D) (Repl. 1996) which provides that a compensable injury must be established by medical evidence, supported by "objective findings" as defined in § 11-9-102(16)(A), which reads as follows:

(i) "Objective findings" are those findings which cannot come under the voluntary control of the patient.

(ii) When determining physical or anatomical impairment, neither a physician, any other medical provider, an administrative law judge, the Workers' Compensation Commission, nor the courts may consider complaints of pain; for the purpose of making physical or anatomical impairment ratings to the spine, straight-leg-raising tests or range-of-motion tests shall not be considered objective findings.

Because we would hold that Britain suffered a compensable injury within the meaning of the foregoing statutory definitions, we have no difficulty concluding — indeed, it logically follows — that there is substantial evidence to support the Commission's decision that Southern Hospitalities is liable for the cost of the medical services and treatment that Britain obtained. Britain's claim is governed by § 11-9-102(5)(A)(i), which expressly defines compensable injury to mean accidental injury causing internal or external physical harm to the body, arising out of and in the course of employment, and which requires medical services or results in disability or death. There is no argument about whether Britain's injury was accidental because the parties agree that it arose from a specific incident and is identifiable by time and place of occurrence. There is no dispute that the July 3, 1993, incident involving the pulling of towels from a washer was the precipitating incident for Britain's injury, although Southern Hospitalities argued before the Commission that her symptoms following that incident were merely a recurrence of her previous back problems from an injury sustained under different employment. As already indicated, Britain's condition required medical services on July 3, 1993, and it resulted in her inability to work. Her condition required medical services thereafter, as proven by the fact that she returned to the hospital for additional examination, was prescribed medication for pain relief and muscle relaxers, and had been referred by the hospital to Dr. Arthur, a neurosurgeon. The fact that Southern Hospitalities, through its workers' compensation insurer, directed Britain to be examined by Dr. Bruce Smith rather than Dr. Arthur is additional proof that her condition required medical services. Dr. Smith diagnosed her condition as a lumbar strain, prescribed medication, and eventually directed her to refrain from working because of her increased symptoms of lower-back and right-leg pain. These facts

are established by Britain's testimony. They are also proven by the medical records related to Britain's treatment on July 3 and 7, 1993, as well as Dr. Smith's clinic notes and other records beginning with his treatment on July 22, 1993, and continuing through his return to work slip dated September 8, 1993.

There is no medical evidence in the record that questions the fact that Britain sustained internal physical harm to her body (in the form of a lumbar strain diagnosed by Dr. Smith and by the doctors that treated Britain before he did). Similarly, there is no evidence questioning whether her lumbar strain required medical services. The fact that she was off work because of the lumbar strain is also undisputed. Based upon these undisputed facts, we are driven to conclude that reasonable minds could not have decided that Britain did not suffer a compensable injury.

Southern Hospitalities contends that Britain did not suffer a compensable injury because the medical evidence is not supported by "objective findings." Operating from that reasoning, the argument proceeds that because Britain did not suffer a compensable injury, the employer cannot be held liable for medical treatment and services under the Workers' Compensation Law. Southern Hospitalities disputes the Commission's decision holding it liable for the cost of Britain's medical treatment, including the treatment and services she received from Dr. Smith and at his direction, by arguing that it merely authorized Britain to obtain that treatment, but that it did not accept responsibility for paying for it. None of this reasoning is persuasive.

There is no proof before us that Britain's lumbar strain — the medical condition diagnosed by every doctor that examined her — comes under her voluntary control. The medical evidence shows that she initially complained of pain along the right side of her back running to her right buttock and leg, and that she described the pain as a pulling type. Although she had good range of motion in the lumbar spine, negative straight leg raising, and normal neurological findings when Dr. Smith examined her on July 22, 1993, Dr. Smith unequivocally stated that she had suffered a mild sprain for which he recommended conservative treatment. If the record contained proof that the medical findings associated with Britain's back sprain were under her voluntary control, we would have no difficulty affirming the Commission's decision that she had not suffered a compensable injury based upon the substantial evidence

standard of review. But we do not read the governing provisions of § 11-9-102 on this issue as constituting a wholesale exclusion of back sprains.

Objective findings are those that cannot come within the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16) (Repl. 1996). A patient with a strained back can voluntarily control her responses to pain associated with the sprain, to be sure, but that is manifestly different from being able to voluntarily control the pain itself and the stretching of the muscles affected. It is important to note that Act 796 only provides that pain may not be considered "when determining physical or anatomical impairment." Ark. Code Ann. § 11-9-102(16)(A)(ii) (Repl. 1996). The inquiry to determine impairment is distinct from the more fundamental inquiry to determine compensability in the first instance.

The General Assembly has never eliminated pain as a consideration when the issue is compensability, either by enacting Act 796 or otherwise. Act 796 clearly eliminated pain as a factor for determining impairment as shown at Ark. Code Ann § 11-9-102(16)(A)(ii). Likewise, at §§ 11-9-521(h)(1)(B) and 11-9-522(g)(1)(B) (Repl. 1996), pain has been eliminated as a basis for an impairment-rating guide that the Commission was required to adopt pursuant to Act 796. However, the General Assembly has not eliminated pain as a factor for determining compensability in strains. The clearest proof that it has not is found at Ark. Code Ann. § 11-9-523 (Repl. 1996), which provides for the compensability of hernia injuries. That statute and its predecessors include the existence of pain as a valid factor for determining compensability. Indeed, the statute requires affirmative proof that the claimant suffered severe pain in the hernial region, "that the pain caused the employee to cease work immediately," and that "the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within seventy-two (72) hours after the occurrence." Section 11-9-521(a). Proof of pain is required in "all cases of claims for hernia" which also requires proof that hernia occurred immediately following the result of sudden effort, *severe strain*, or the application of force directly to the abdominal wall. *Id*.

The Workers' Compensation Law has included the foregoing proof requirement regarding pain for the abdominal-strain condition known as hernia since 1948, when Arkansas adopted its work-

ers' compensation scheme. The General Assembly has always known that pain is a required element of proof for hernia claims, and that other sprain or strain injuries — including back strains such as suffered by Britain in the present case — are typically characterized by the presence of pain as a diagnostic finding and have repeatedly been upheld as compensable. If the General Assembly intended to change more than forty years of Arkansas law and eliminate pain as a permissible factor for determining compensability in workers' compensation cases involving strains, it clearly could have done so by using plain language to that effect in Act 796. Instead, the General Assembly did nothing to legislate strains and sprains out of our Workers' Compensation Law. It left the hernia statute unchanged regarding the requirement that pain be shown to establish compensability. It expressly declared pain to be an impermissible factor only for determining impairment. At Ark. Code Ann. § 11-9-704(c)(3), the General Assembly directed that administrative law judges, the Commission, "*and any* (sic) *reviewing* courts shall construe the provisions of this chapter strictly." (emphasis added). Moreover, at § 11-9-1001 the General Assembly served notice to the Commission and the courts that any changes to the Workers' Compensation Law were its exclusive business, by the following unmistakable language:

> When, and if, the workers' compensation statutes of this state need to be changed, the General Assembly acknowledges its responsibility to do so. It is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision *in this act. In the future, if such things as the . . . extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.*

Therefore, to conclude that Britain's strain was somehow unproven requires that one dismiss the opinion of every doctor that treated her injury. It further requires us to judicially legislate pain out of the permitted factors that may be considered when compensability

determinations are made and legislate back strains out of the medical conditions covered by the Workers' Compensation Law, despite the fact that the General Assembly has flatly declared that it alone will decide if "any physical condition, injury, or disease should be excluded from" coverage under the Workers' Compensation Law.

We also find the employer's argument concerning its liability for Britain's medical treatments and their cost to be fundamentally flawed. Ark. Code Ann. § 11-9-508(a) (1996) requires that an employer promptly provide for an injured employee such medical, surgical, hospital, chiropractic, and other medical treatment as may be reasonably necessary in connection with an injury received by the employee. Neither that statute nor anything else in the Workers' Compensation Law obligates an employer to provide and pay for treatment for conditions that are not ultimately found to be compensable. Workers' compensation is a scheme of social legislation aimed at protecting employees from the disabling consequences and financial costs of injuries that are work-related. The Seventy-Ninth General Assembly made this point plain at Section 35 of Act 796, codified as Ark. Code Ann. § 11-9-1001 (Repl. 1996), which includes the following pertinent observation:

> The Seventy-Ninth General Assembly realizes that the Arkansas workers' compensation statutes must be revised and amended from time to time. Unfortunately, many of the changes made by this act were necessary because administrative law judges, the Workers' Compensation Commission, and the Arkansas courts have continually broadened the scope and eroded the purpose of the workers' compensation statutes of this state. The Seventy-Ninth General Assembly intends to restate that *the major and controlling purpose of workers' compensation is to pay timely temporary and permanent disability benefits to all legitimately injured workers that suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force* . . . . (emphasis added).

In view of this plain expression of legislative intent that workers' compensation benefits are intended to pay the cost of reasonable and necessary medical expenses that result from injuries and diseases arising out of and in the course of the employment, we cannot read the statutory duty imposed by § 11-9-508(a) to mean that the obligation to provide prompt and reasonably necessary

services and treatment for a compensable injury does not include liability for the cost of the services and treatment. If workers' compensation benefits are intended to provide payment for injuries arising out of and in the course of the employment, including the cost of reasonable and necessary medical expenses associated with those injuries, then the statutory duty imposed by that section of the workers' compensation law simply means that an employer has a duty to provide and is liable to pay the cost of reasonable and necessary medical expenses associated with work-related injuries. The appellants here have made no claim that the medical expenses were not reasonable and necessary. The idea that the General Assembly intended by the workers' compensation scheme to impose the cost of medical care and treatment upon an employer for an injury that does not arise out of and occur in the course of the employment where the employer has disputed the injury is beyond rational belief, in addition to being contrary to the explicit declaration of legislative intent that accompanied Act 796.

Any lingering doubt about this issue is resolved by reference to Ark. Code Ann. § 11-9-510 (Repl. 1996) which states that the employer "shall not be liable for *any of the payments provided for in §§ 11-9-508 — 11-9-516 in the case of a contest of liability where the Workers' Compensation Commission shall decide that the injury does not come within the provisions of the Workers Compensation Law.*" (emphasis added). Likewise, it is illogical to conclude that a worker who suffers a compensable injury, as we believe Britain did, should be forced to pay the cost of her treatment when her employer knows that the injury was work-related and has directed her to obtain the very treatment for which it refuses to pay.

Accordingly, we find no support for the argument advanced by Southern Hospitalities that authorizing medical services for a compensable injury does not make an employer liable for their costs. If Britain did not sustain a compensable injury then Southern Hospitalities was not liable for the cost of her treatment. Ark. Code Ann. § 11-9-510. (Repl. 1996). However, where Southern Hospitalities authorized the treatment for an injury it initially considered compensable, it also made itself liable for its cost. An employer may authorize treatment and be liable for its cost even when it has not determined an injury to be compensable, as when it is trying to investigate whether a condition may have originated from or been caused by a workplace hazard or condition. As the prevailing opin-

ion indicates, an employer may be estopped to deny liability when it has engaged in a course of conduct that is inconsistent with an attempt to avoid or deny liability for the cost of medical care and treatment. We believe, however, that compensability here has been conclusively established so that the employer should be held liable for all reasonable and necessary medical expenses without resort to the estoppel principle embraced by the prevailing opinion.

It necessarily follows from our conclusion that Britain suffered a compensable injury that the Commission's decision denying her claim for temporary total disability benefits should be reversed because it is not supported by substantial evidence. As we observed in our analysis of the medical benefits issue, all of the evidence conclusively demonstrates that Britain's back strain occurred from her effort of pulling towels from a washer on her job on July 3, 1993. The evidence shows that she was unable to work from July 22 to August 12, 1993, because of the back strain. There is no evidence showing that her incapacity from working occurred due to any other reason.

We are unable to conclude that fair-minded persons faced with this conclusive body of proof could decide that Britain's incapacity to work from July 22 to August 12, 1993, was not caused by her July 3, 1993, back strain that arose out of and occurred in the course of her employment by Southern Hospitalities. Therefore, we would reverse the Commission's decision denying her claim for temporary total disability benefits for that period of time, and would remand the case to the Commission to award the benefits appellee is rightfully due.

We recognize that the changes to the Workers' Compensation Law that were enacted as Act 796 of 1993 were intended to narrow what some observers considered overly broad interpretations of the law, that the law is to be construed strictly, and that Ark. Code Ann. § 11-9-1001 specifies that any alteration of the scope of the law shall be addressed by the General Assembly rather than the courts or the Commission. Our decision today is fully consistent with that legislative intent. Britain's back strain is a compensable injury because there is clear and conclusive proof that it arose out of and occurred in the course of her employment, required medical services, and resulted in disability. Our conclusion on that point is based upon the undisputed medical proof of her condition, and the

total absence of any proof that her medical findings came under her voluntary control.

According to the 1993 Survey of Nonfatal Occupational Injuries and Illnesses published by the Arkansas Department of Labor, sprain and strain was, by far, the leading injury and illness category in every major industry division in Arkansas. The survey also reported that the back and other portions of the trunk were the major parts of the body affected, with sprains accounting for nearly a fourth of the survey case total. Sprains and strains may rely, perhaps more than other maladies, on a claimant's assertion of pain, but we refuse to judicially eliminate pain as a consideration for determining compensability when the Arkansas General Assembly has not done so. In fact, the General Assembly has bluntly declared that the courts shall not exclude any physical condition from coverage (i.e. compensability) under the Workers' Compensation Law because it has reserved the task of narrowing or broadening coverage to itself. *See* Ark. Code Ann. § 11-9-1001 (Repl. 1996). We find no justification for concluding that the General Assembly intended to exclude back strains from being covered by the Workers' Compensation Law.

If the proof presented for sprain and strain injuries is conflicting, the substantial evidence standard of review will result in the Commission's decisions in those cases being affirmed. Where, as here, the proof concerning a sprain or strain is undisputed and unequivocal, we are convinced that a compensable injury has been established entitling the affected worker to the benefits allowed by the Workers' Compensation Law.

We concur in the result affirming the award of the medical benefits, and dissent from the decision holding appellee's injury noncompensable.

I am authorized to state that MAYFIELD, J., agrees with this opinion.